# MATTER OF RICHARD LEE TRADER

[No. 380, September Term, 1973.]

\* \* \*

# STATE OF MARYLAND *v.* RICHARD LEE TRADER

[No. 589, September Term, 1973.]

*Decided February 11, 1974.*

2

The cause was argued before ORTH, C. J., and MORTON and THOMPSON, JJ.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Howard B. Merker* and *James Schneider, Assistant State's Attorneys for Baltimore City,* on the brief, for appellant.

*Alan H. Murrell, Public Defender,* and *Alfred J. O'Ferrall, III, Deputy Public Defender,* with whom were *Richard T. Cremin, Mae S. Sinsheimer* and *Geraldine Kenney Sweeney* on the brief, for appellee.

*Amicus Curiae* brief filed by Family and Juvenile Law Section, Maryland State Bar Association, *Carville M. Downes* on the brief.

ORTH, C. J., delivered the opinion of the Court.

I

The General Assembly of Maryland, recognizing the advisability of providing for "the care, protection and wholesome mental and physical development of children", removed, as one means to that end, "from children committing delinquent acts the taint of criminality and the consequences of criminal behavior", and provided "a program of treatment, training, and rehabilitation consistent with the protection of the public interest." Maryland Code, Courts and Judicial Proceedings Article, § 3-802.[1] The general law relating to juvenile causes was

---

1. Chapter 2, Acts 1973, First Extraordinary Session of the General Assembly of Maryland repealed the provisions of the Annotated Code of Maryland dealing with courts and the judiciary and re-enacted them with revisions to be codified as a Courts and Judicial Proceedings Article, hereinafter cited as "Courts Art." The laws as re-enacted made, in large measure, only stylistic revisions and those in which substance appears were, in general, not changes of a major nature. Section 18 of ch. 2 provided that "except as expressly provided to the contrary * * * the Courts and Judicial Proceedings Article shall apply to all proceedings commenced after December 31, 1973, and, so far as practicable, to all proceedings then pending. If a court determines that it is not practicable to apply a provision of the Courts and Judicial Proceedings Article to a proceeding pending on January 1, 1974, then that proceeding shall be concluded under the pertinent statutory provisions in effect on December 31, 1973." Unless expressly stated to the contrary we deem it practicable to dispose of the

4

substantially rewritten by ch. 432, Acts 1969, codified as Art. 26, §§ 51-71. Both under the old law as previously in effect and as revised in 1969, the Legislature, in certain circumstances, deemed it necessary in the protection of the public interest to strip the sheltering cloak of juvenile procedures from delinquent children. It provided that a court having jurisdiction in juvenile causes may waive its exclusive jurisdiction over a delinquent child and order that child held for trial under regular procedures of the court which would have jurisdiction over the offense if committed by an adult. We summarized the law relating to waiver of juvenile jurisdiction in *Aye v. State*, 17 Md. App. 32, decided 31 January 1973. See Courts Art. § 3-816.

An order of a juvenile court waiving its exclusive jurisdiction over a delinquent child was subject to immediate appellate review at the option of an aggrieved party.[2] This was so because "An aggrieved party may appeal from any final order, judgment, or decree of the juvenile court to the Court of Special Appeals in the manner prescribed by the Maryland Rules." Code, Art. 26, § 70-25. See Maryland Rules, chapter 1000. Under the old law, *Thomas v. State*, 10 Md. App. 458, 461, and the new law as revised in 1969, *Wheeler v. State*, 10 Md. App. 624, 626, an order waiving jurisdiction was a final order and terminated the jurisdiction of the juvenile court over the case. This was spelled out in plain words in § 70-16 (c) of Art. 26: "An order of waiver shall be considered a final order and terminates the jurisdiction of the [juvenile] court over the case." In *Aye v. State, supra*, at 36-40, we discussed the jurisdiction of the various courts involved and the procedures to be followed

appeals before us under the provisions of the Courts and Judicial Proceedings Article.

Subtitle 8, Title 3, of the Courts and Judicial Proceedings Article concerns Juvenile Causes. " 'Child' means a person under the age of 18 years who is subject to the jurisdiction of the [juvenile] court." Courts Art. § 3-801 (e). " 'Delinquent act' means an act which is in violation of the State vehicle law, any other traffic violation, or an act which would be a crime if done by a person who is not a child." Courts Art. § 3-801 (j). See Courts Art. § 3-808 (2).

**2.** " 'Party' means the child against whom a complaint has been made, and his parent, guardian, or custodian." Courts Art. § 3-801 (v). See Rule 901 a 2.

when a waiver of juvenile jurisdiction was challenged on direct appeal and when it was not so challenged, and the law in that area was satisfactorily settled.[3]

On 1 July 1973 the law concerning appeal from waiver of juvenile jurisdiction became decidedly unsettled. This was the effective date of ch. 773, Acts 1973. It repealed and re-enacted § 70-16 (c) of Code, Art. 26. "An order of waiver shall be considered a final order and terminates the jurisdiction of the court over the case" was rewritten to read, as stylistically revised by the Courts Article: "An order waiving jurisdiction is interlocutory." Courts Art. § 3-817. The effect was drastic. Being interlocutory, a waiver order was no longer immediately appealable, and it is patent that this was the legislative intent. Whether it was appealable at all, and if so, how and when, was put in limbo.

## II

The provisions of the general law relating to juvenile causes do not apply to Montgomery County. Code, Art. 26, § 71, read: "The provisions of this subtitle [Juvenile Causes] shall not apply to Montgomery County."[4] Courts Art. §

---

**3.** We see no material change as to appeal of a final order of the juvenile court under the Courts and Judicial Proceedings Article. Courts Art. § 12-301 provides, with exceptions not here pertinent that "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." It continued: "The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." "Circuit Court" encompasses the circuit court for a county and the courts comprising the Supreme Bench of Baltimore City. Courts Art. § 12-101 (d). " 'Final judgment' means a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." Courts Art. § 12-101 (f). The revisor's note thereto explains: "This definition does not attempt to specify what is an appealable final order. This is left to case law, as at present." The former provisions of Code, Art. 26, § 70-25, spelling out the right of an aggrieved party to appeal from a final order of the juvenile court, do not appear in that form in the Courts Article. The revisor's note says that portions of it are in § 12-701 (b) but the provisions therein concern stay of execution on appeal from a juvenile court.

**4.** Acts 1969, ch. 432, § 5 provided that it shall be "effective in Montgomery County only when sections 72 through 90, inclusive, of Article 26, of the Annotated Code of Maryland (1966 Replacement Volume and 1968 Supplement), title, 'Courts', subtitle, 'Juvenile Causes in Montgomery County' is repealed." Those sections were repealed by ch. 2, Acts 1973, First

4-403 prescribes: "In Montgomery County only, the District Court has jurisdiction in juvenile causes as provided in subtitle 5 [Juvenile Causes in Montgomery County] of this Title." [5] The purposes of the subtitle, although couched in different language, are in substance the same as the declared purposes of the general law of juvenile causes, and it is clear that the underlying philosophy of the general law and of the Montgomery County law is the same. [6] Jurisdiction under the general law is similar to that under the Montgomery County law, [7] and the substantive and procedural aspects of each law are generally comparable. The jurisdiction bestowed and the substantive and procedural aspects prescribed are such as to accomplish the purposes of the laws.

Like the general law, the Montgomery County law contains provisions for the waiver by the juvenile court of its jurisdiction. Courts Art. § 4-506. [8] Under each law the procedure after waiver is for the court to order the child

---

Extraordinary Session, but it is clear from the Courts and Judicial Proceedings Article as enacted by ch. 2 that Montgomery County is still exempted from the general law, even though Code, Art. 26, § 71 is noted in the frame of reference of the new Article as "Repealed." See Courts Art. § 1-604, § 4-403 and § 4, subtitle 5, entitled "Juvenile Causes in Montgomery County."

5. This was derived from Code, Art. 26, § 145 (d), which was repealed by ch. 2, Acts 1973, First Extraordinary Session.

6. See Courts Art. § 3-802 (general law) and § 4-502 (Montgomery County law).

7. See Courts Art. §§ 3-803 to 809, inclusive (general law) and §§ 4-504 to 508, inclusive (Montgomery County law). For example, as material to our discussion, under each law the juvenile court has exclusive jurisdiction over a child alleged to be delinquent, that is a child, who, among other things, is alleged to have committed an act which would be a crime if done by a person who is not a child. Courts Art. § 3-801 (j) and (k), § 3-804 (a) (1), § 4-501 (e), § 4-504 (a).

8. Under the general law a juvenile court may waive its jurisdiction over a child alleged to be delinquent who is 14 years old or older, or who has not reached his 14th birthday, and who is charged with committing an act which, if committed by an adult, would be punishable by death or life imprisonment. Courts Art. § 3-816 (a) and (b). Under the Montgomery County law, the juvenile court may waive jurisdiction over a child 16 years old or older who is charged with an act which would be a misdemeanor or felony if committed by an adult or a child under the age of 14 years who is charged with committing an act which would be punishable by death or life imprisonment if committed by an adult. Courts Art. § 4-506 (a). The Legislature may wish to consider the desirability of making the waiver conditions uniform.

proceeded against as an adult. Courts Art. § 3-816 (e), § 4-506 (b) and § 4-509. But unlike the present status of the general law, the waiver order under the Montgomery County law is a final order. Courts Art. § 4-508 provides that jurisdiction obtained by the juvenile court continues until the child reaches 21 years of age *unless the court terminates jurisdiction sooner.* (emphasis supplied) The waiver order, because it terminates the jurisdiction of the juvenile court, is a final order in the absence of statutory provision to the contrary,[9] and, as such, is immediately appealable.[10]

The effect of all this is that in Montgomery County a child alleged to be delinquent may have the juvenile court's decision to waive its jurisdiction reviewed on appeal before action under the regular procedure that would follow if the acts it is claimed he committed were committed by an adult, but in all other parts of the State such a child, subject only to the waiver order being valid on its face, is prosecuted for criminal conduct as an adult without the right first to have the validity of the waiver by the juvenile court determined under appellate procedures. The unfavorable position of the child without the boundaries of Montgomery County is obvious.

### III

Although, in Maryland, appellate jurisdiction is at the largess of the General Assembly, a state not being required by the federal constitution to provide the right of appellate review, when the right is given, a person is protected from invidious discriminations with respect thereto or from improper denials thereof by the due process and equal

---

**9.** Courts Art. § 3-817, making waiver orders interlocutory, does not apply to Montgomery County.

**10.** Courts Art. § 12-401 (a) provides that a defendant in a criminal case may appeal from a final judgment entered in the District Court, and § 12-403, after prescribing that an appeal from the District Court in one of the counties shall be taken to the circuit court in which the judgment was entered, expressly declares that in Montgomery County, an appeal from the District Court sitting as a juvenile court shall be treated as an appeal in a criminal case. As such the question of waiver shall be tried de novo. Courts Art. § 12-401 (c).

protection clauses of the federal constitution.[11] *State v. Lohss*, 19 Md. App. 489, citing *Griffin v. Illinois*, 351 U. S. 12, 18; *Harris v. State*, 6 Md. App. 7, 17; *McCoy v. Warden*, 1 Md. App. 108, 121. We think that the unfavorable position with respect to the immediate right of appeal from a waiver of juvenile jurisdiction of a child in other parts of the State as compared to a child in Montgomery County amounts to prejudice of constitutional dimension.

"The Equal Protection Clause relates to equality between persons as such rather than between areas." *Salsburg v. State of Maryland*, 346 U. S. 545, 551. "It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." *State of Missouri v. Lewis*, 101 U. S. 22, 31. Prior to the enactment of ch. 773, Acts 1973, all children within that class of persons consisting of children alleged to be delinquent enjoyed the same protection of the laws — they all had the right to an immediate appeal from an order of a juvenile court waiving its jurisdiction over them to a court with criminal jurisdiction. The statute, however, leaving the right to the members of the class in Montgomery County, denied the right as to members of the class in the rest of the State. We think that ch. 773, Acts 1973, now codified as Courts Art. § 3-817, is in contravention of the equal protection and due process clauses of the Fourteenth Amendment and is invalid with respect to the waiver order being interlocutory.

The general rule is that "A statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." *Metropolitan Casualty Ins. Co. v. Brownell*, 294 U. S. 580, 584. We cannot reasonably conceive of a state of facts to justify distinguishing, with respect to the right to appeal from a waiver order, between a child alleged to have

---

**11.** Those clauses, contained in Section 1 of Amendment XIV to the Constitution of the United States, read: "* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

committed a delinquent act in Montgomery County and a child alleged to have committed such an act in any other county or Baltimore City. We were persuaded in *Greene v. State*, 11 Md. App. 106, in adopting the holding in *Long v. Robinson*, 316 F. Supp. 22 (D. Md. 1970), affirmed in *Long v. Robinson*, 436 F. 2d 1116 (4th Cir. 1971), that there was no reasonable justification for the requirement that those persons 16 and 17 years old arrested for acts committed in Baltimore City be tried as adults in the Criminal Court of Baltimore, when persons the same age arrested for acts anywhere else in Maryland would be first subject to the jurisdiction of the juvenile court system.[12] The United States District Court [13] concluded that there was no psychological or physical basis for distinguishing between 16 and 17 year old persons residing in Baltimore City and in the Counties and that, if there was in the past reasonable ground for such distinction, there was no present justification for it—such basis no longer exists. It found the exception as to Baltimore City to be arbitrary, unreasonably discriminatory, and not related to any legitimate State objective, with an effect which was not hypothetical or theoretical but starkly real. 316 F. Supp. at 27-28. We think the denial of appeal everywhere in the State except Montgomery County to be equally arbitrary, unreasonably discriminatory and unrelated to any legitimate State objective. The child alleged to be delinquent for the commission of a crime in Montgomery County, regardless of residence, see Courts Art. § 4-504 (a), upon waiver by the juvenile court, will not be tried under criminal procedures as an adult, if he opts to have the validity of the waiver tested on appeal, until the waiver has been found to meet all applicable statutory and constitutional requirements. Anywhere else in the State, upon waiver of the juvenile court, such child will be held as an adult, and, subject only to the waiver order being valid on its face, will be tried under criminal procedures as an

---

**12.** Subject, as we have observed, to waiver of juvenile jurisdiction after a full due process hearing.

**13.** The United States Court of Appeals, Fourth Circuit, affirmed the holding of unconstitutionality of the applicable laws on the opinion of the district court. 436 F. 2d at 1118.

adult.[14] The child waived to the criminal court in other than Montgomery County, even if ultimately acquitted or even if afforded appellate review of the waiver after conviction, has been compelled to stand trial on criminal charges as an adult, unlike the child in Montgomery County, without the opportunity of an appellate determination whether the waiver procedure met statutory and constitutional requirements. We believe that the discrimination patently resulting therefrom is not hypothetical or theoretical, but starkly real.

We hold that the part of ch. 773, Acts 1973, formerly codified as Art. 26, § 70-16 (c), presently codified as Courts Art. § 3-817, which declares "An Order waiving jurisdiction is interlocutory", is unconstitutional and void.[15]

Whether our holding may be deemed to resurrect the former statute providing that "An order of waiver shall be considered a final order and terminates the jurisdiction of the court over the case" or to leave it repealed, is immaterial. Even without the express declaration of finality, under the remaining provisions of the law it is patent that, absent the legislative prescription to the contrary, an order waiving jurisdiction terminates the jurisdiction of the juvenile court, and is, therefore, a final order. "A person subject to the jurisdiction of the juvenile court may not be prosecuted for a

---

**14.** Whether a child waived to the criminal court in other than Montgomery County could have the validity of the waiver order reviewed on the merits on appeal, even upon conviction, is uncertain under the present status of the law. We note that the criminal court in which the conviction is obtained would not be the court issuing the order of waiver.

**15.** Code, Art. 1, § 23, provides:

"The provisions of all statutes enacted after July 1, 1973 are severable unless the statute specifically provides that its provisions are not severable. The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent."

As the Juvenile Causes statutes here considered were enacted after 1 July 1973, and, as we do not find that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with legislative intent, the validity of the remaining portions is not affected.

criminal offense committed before he reached 18 years of age unless jurisdiction has been waived." Courts Art. § 3-809. It necessarily follows that he may be so prosecuted upon waiver, and to be so prosecuted the jurisdiction of the juvenile court must have terminated. The jurisdiction of a juvenile court over a child continues until the person has reached 21 years "unless terminated sooner." Courts Art. § 3-815 (a). As the waiver is the "sooner" termination, upon the order of waiver the jurisdiction of the juvenile court is ended.

## IV

Four petitions were filed by the State's Attorney for Baltimore City in the Circuit Court of Baltimore City, Division for Juvenile Causes (Juvenile Court) alleging that RICHARD LEE TRADER, born 16 November 1955, was a delinquent child.[16] The State's Attorney requested that the jurisdiction of the Juvenile Court be waived. A waiver hearing was had on 6 July 1973. The same date the court waived its jurisdiction as to each of the petitions and ordered Trader held for action under the regular criminal procedures.[17] On 26 July 1973 Trader noted an appeal therefrom. It was docketed in the Court of Special Appeals of Maryland as Matter of Richard Lee Trader, No. 380, September Term, 1973.

---

**16.** Petition #005579, filed 29 May 1973, alleged Trader was delinquent for the reason that on 23 May 1973 he wilfully and maliciously set fire to a storehouse at 500 S. Hanover Street.

Petition #005580, filed 29 May 1973, alleged Trader was delinquent for the reason that on 24 May 1973 he wilfully and maliciously set fire to a storehouse at 219 S. Sharp Street.

Petition #006509, filed 27 June 1973, alleged Trader was delinquent for the reason that on 8 May 1973 he wilfully and maliciously set fire to a warehouse at 208 S. Fremont Avenue.

Petition #006510, filed 27 June 1973, alleged that Trader was delinquent for the reason that on 12 May 1973 he wilfully and maliciously set fire to a dwelling at 821 W. Lombard Street.

**17.** On 29 May 1973, when Trader appeared before the Juvenile Court under petitions Nos. 005579 and 005580, the judge ordered that an evaluation of him be made to determine if he was competent to undergo a waiver hearing. The report of the Psychiatric Consultant of the Maryland Children's Center dated 21 June 1973 reads: "As a result of my examination, it is my opinion that Richard is able to understand the nature and consequences of the proceedings against him, and to assist in his defense."

The grand jury for the City of Baltimore filed four presentments on 7 August 1973 and four indictments, Nos. 17303355-56-57 and 58, on 16 August, charging Trader with four crimes of arson and related offenses, predicated upon the acts upon which the delinquency petitions were based. On 4 September Trader moved to dismiss the indictments on the ground that the statute designating an order of waiver interlocutory was unconstitutional. The motion was heard in the Criminal Court of Baltimore on 24 September. The court granted the motion to dismiss the indictments, finding that the amendment of the statute was "so repugnant to the original jurisdictional plan for juvenile proceedings as evidenced by Article 26 that it must be stricken down as being unconstitutional." The State appealed from the order dismissing the indictments. Courts Art. § 12-302 (c). The case was docketed in the Court of Special Appeals of Maryland as State v. Richard Lee Trader, No. 589, September Term, 1973. Upon joint motion of Trader and the State, the two cases were consolidated for briefing and argument by order of this Court of 29 October 1973.[18]

## V

In case No. 380 the State moved to dismiss the appeal, claiming that as at the time of the waiver hearing an order waiving jurisdiction was interlocutory, there was no right of appeal. In the light of our holding unconstitutional and void the part of ch. 773, Acts 1973, formerly codified as Art. 26, § 70-16 (c), presently codified as Courts Art. § 3-817, which declares "An order waiving jurisdiction is interlocutory", the motion to dismiss is denied. This leaves the appeals from the waiver orders properly before us.[19]

With respect to case No. 589, we set out the effect of an order of waiver in Aye v. State, supra, at 36-37:

---

**18.** By order of 20 December 1973 this Court granted leave to the Section on Family and Juvenile Law of the Maryland State Bar Association to participate in the consolidated cases as *amicus curiae.* We acknowledge with appreciation its interest and the assistance provided by its comprehensive brief.

**19.** The waiver orders here were valid on their face and there is no claim to the contrary.

"Jurisdiction over the person of the child then vests in the court having jurisdiction over the criminal offense with which that child is charged. If an appeal is noted from an order of waiver in accordance with the Maryland Rules, the criminal court, pending the determination of the appeal has no jurisdiction over the case. This Court is then vested with the exclusive power and jurisdiction over the subject matter of the proceedings, and the authority and control of the lower court with reference thereto are suspended. * * * This is so even though the general rule is that an appeal in the juvenile proceeding shall not stay the order, judgment, or decree appealed from, * * *." (footnotes and citations omitted)

Courts Art. § 3-809, entitled "Prosecutions Barred in Absence of Transfer", provides: "A person subject to the jurisdiction of the juvenile court may not be prosecuted for a criminal offense committed before he reached 18 years of age unless jurisdiction has been waived." Upon the noting of the appeal from the waiver orders, whether the jurisdiction of the juvenile court over Trader had been effectively waived, could not be determined until validity of the waiver proceedings had been resolved under appellate procedures. If it was found that the waiver proceedings were invalid, jurisdiction reverted back to the Juvenile Court. If it was found that the waiver proceedings were valid, jurisdiction became vested in the criminal court. But until a final appellate determination that the waiver was valid, prosecution for a criminal offense was barred.

It follows that in case No. 589 the Criminal Court of Baltimore had no jurisdiction, and, therefore, its actions on all matters which came before it concerning Trader, including the grant of the motion to dismiss the indictments, were null and void. As to case No. 589 the appeal is dismissed, there being nothing from which to appeal. Rule 1035, §§ a 2 and b (1).[20]

---

**20.** The appeal as to case No. 589 being dismissed, the validity of the

## VI

There remains the question of the propriety of the waiver proceedings. Trader claims that the evidence was not sufficient to sustain the court's decision to waive its jurisdiction. The degree of proof required was a preponderance of the evidence. Courts Art. § 3-830 (e).

The purpose of a juvenile waiver hearing is to determine the fitness of the child for juvenile rehabilitative measures giving due consideration for the safety of the public. *Matter of Flowers,* 13 Md. App. 414, 416. The factors to be considered are designated in Courts Art. § 3-816 (c):

> "(1) age of child;
> (2) mental and physical condition of child;
> (3) the child's amenability to treatment in any institution, facility, or program available to delinquents;
> (4) the nature of the offense; and
> (5) the public safety."

Not all of the factors, however, need be resolved against the juvenile to justify waiver. *Hazell v. State,* 12 Md. App. 144, 155. The court is not required to make an arithmetic-type calculation as to the weight it assigns each factor. The general rule is that a waiver will be upheld where a preponderance of the legally sufficient evidence shows that such a determination is proper in the light of the factors to be considered. *Matter of Barker,* 17 Md. App. 714, 721; *Matter of Johnson,* 17 Md. App. 705.

For the purpose of making a determination a court may request that a study concerning the child, his family, his environment and other matters relevant to the disposition of the case be made. Courts Art. § 3-816 (e); Rule 911 b. A waiver investigation was made in this case and a

---

indictments returned against Trader is not before us. It may be that the statutory proscription against prosecution of a child for a criminal offense unless jurisdiction has been effectively waived by the juvenile court encompasses the return of the indictment. If so, the indictments would be null and void.

comprehensive report submitted by the Department of Juvenile Services.[21] Trader concedes that the hearing judge "expressly based his decision on all of the statutory criteria." He challenges, however, "the trial court's conclusions on each criterion as unsupported by a preponderance of the evidence, and further challenges the court's holding that the cumulative effect of the five [criteria] was sufficient to warrant waiver."

Trader's competency to participate in the waiver hearing was expressly conceded by his counsel. For the record the court reviewed Trader's record:

> "[T]he respondent is 17 years of age and will be 18 on November the 16th of this year. Let the record also show that on September 25th, 1969 the respondent was found to be a child in need of supervision, by reason of being ungovernable, to being truant, and leaving home without permission. There was a mental evaluation conducted. And he was later committed to Boy's Village. On October 16th, 1969 he was found delinquent on a charge of setting fire on an abandoned public school and doing extensive damage. Matter was continued pending an investigation. And he was remanded to Boy's Village where he had been on the other petition that I had previously mentioned. On November 28th, 1972 he was found delinquent on the charge of breaking and entering a storehouse and stealing therefrom property in the value of $268.00. He was detained at the Maryland Children's Center pending an evaluation. And was then placed on probation. Also on November 28th, 1972 he was charged in breaking and entering a dwelling house in the nighttime and taking

---

**21.** It included, in addition to the details of Trader's past history, psychiatric and psychological evaluations, report of physical examination, educational evaluation, social service evaluation and educational diagnostic assessment. It was recommended that Trader be returned home and placed on probation. The court was not bound to accept this recommendation. *Hazell v. State, supra,* at 155.

property therefrom valued at $297.00. And he was placed on probation in that matter. Also on November 28th, 1972 he was found delinquent for breaking into a storehouse in the early hours of the morning and taking property therefrom valued at $448.65. And he was placed on probation for that offense.

* * *

On June the 6th, 1972 he was found delinquent for inhaling toxic vapors from glue and was given a warning. On February 14th, 1973 he was found delinquent while on probation for breaking into a storehouse in the early morning hours and taking therefrom\ property valued at $9.50. He was detained on that matter at the Maryland Training School for Boys. And he was then subsequently placed on probation on condition that he go to West Virginia and reside with his grandmother.

And this is the extent of the record of the respondent in this court as we find it."

With the benefit of the waiver investigation report and argument of counsel, the court gave a statement of the grounds for its decision as required by Rule 911 c:

"I am going to grant the State's request and waive jurisdiction in all four of these petitions. I certainly am not one bit happy in doing so. I am never happy in waiving jurisdiction in any hearing, because to waive jurisdiction in a juvenile's case is certainly an indictment of the juvenile system. Because ideally the juvenile system should have a sufficient diversity of facilities and treatment resources that it can handle any juvenile regardless of his particular needs and problems. That there is something at the juvenile level which can effectively treat him, but we don't have that ideal, unfortunately. And we have to face the situation as

we have it. So I say it's an indictment of the juvenile system when we have to waive jurisdiction.

This is a terribly sad situation here. There was no question that the background of the respondent is precisely as Miss Sinsheimer [Trader's counsel] has described it. However, I feel that under all of the criteria waiver is called for here. The respondent is 17 years of age and very close to being 18. He is of no more than average physical size for his age. And although he has certain mental limitations, the reports all indicate that there was no impairment of his intellectual function and that he is competent in this regard. And the amenability of treatment at the juvenile level is perhaps the most critical factor of all in my determination. This respondent has unfortunately a very lengthy history, as we know in this Court. We have tried various types of supervision. They never work. He's been placed in a training school. It has not worked. There have been numerous escapes from the training school. He even escaped, not withstanding Dr. Murray's statement in his report of June 8th that — talks about Richard being in B-2 level, that Richard is apparently adjusted satisfactorily here and there are no behavior reports in the folder. This is contradicted by the report of July 3rd, 1973 — well, it's not contradicted. The evaluation was June 8th and the report of July 3rd indicates that on June 27th, subsequent to the time that Dr. Murray wrote his report, Richard escaped from the Maryland Children's Center, which happens to be the most secure of all the juvenile institutions in the State of Maryland. He was subsequently returned, but he did escape from there. Obviously a facility can not treat somebody who is not there. And Richard has shown that he will repeatedly run, from even the most secure institution we have in the State of Maryland for juveniles. And as recently as about a week ago, nine days ago.

It's true Dr. Murray does not recommend waiver because he says it would not seem in the boy's best interest, for juvenile jurisdiction to be waived. And I quote from his report, while it may not be in the boy's best interest. Although Dr. Smith, the psychiatrist feels it would be in his best interest that the best treatment available for this boy would be in a facility that is not available to juveniles. So there is a substantial discrepancy here. But Dr. Murray, it is interesting to note that, recommends that it was needed for this boy to find a placement for him and to give him this vocational rehabilitation. He talks about, that he be placed in a setting which would provide counseling and vocational training, that he not be placed back on the streets in a short period of time. Now, it's very interesting that this is precisely the recommendation that Dr. Murray made last December. And in the previous Maryland Children's Center report and this is precisely the kind of program which was set up for Richard. And as indicated previously the kind of program which Richard rejected. Dr. Murray is coming back with the same suggestion again, that this is what he thinks Richard needs. And I don't think there is any question that if Richard would respond in a positive way to that type of program, I'm sure it would have benefit to him. But he's demonstrated that he is uninterested, in that type of program.

\* \* \*

We have in the Maryland Children's Center report the psychiatric evaluation and the psychiatric addendum. This is the most recent report I'm speaking of. And, Dr. Smith states as Mr. Schneider pointed out that he feels that this young man has no concern, no remorse, no feeling of guilt about the behavior of setting fires. And he says that it's clear to him that his behavior, respondent's behavior is sociopathic, injurious and

essentially out of control. And he says it's also clear to him that he requires placement in a controlled setting. Where ideally he should receive some form of treatment. And he specifically recommends one facility which is, I've indicated before is a facility only available on an adult level. And Dr. Smith knows this and Dr. Smith points out that for him to receive the treatment in this facility it would require a waiver of jurisdiction and this is what his recommendation would be. And so waiver of jurisdiction may be in the best interest of this child, in the sense of being able to receive a particular type of treatment available only at the adult level. But leaving that consideration aside for the moment we go into the matter of the nature of the offenses and the safety of the public. Because these are valid considerations as well in determining whether or not to waive jurisdiction. And even if it may not be in the best interest of the respondent it may be required because of the best interest of the community. The serious nature of these offenses speaks for itself. The respondent unfortunately has a history of fire setting. He has according to Dr. Murray admitted to setting 30 to 40 fires. In addition to the fires we have the offenses that he's been found delinquent on numerous breakings and enterings, and into dwelling houses at night, storehouses, stealing very substantial amounts of property. And so I think it's very clear that the offenses could hardly be more grave. And it's also very clear, I think, that there is a very grave danger as well to the community. And so it's for these reasons that I grant the State's request and waive jurisdiction in these four petitions."

On the record before us, we think that the finding of the court below that Trader was an unfit subject for juvenile rehabilitative measures was an exercise of sound judicial discretion based upon legally sufficient evidence. Therefore, its judgment on the evidence was not clearly erroneous. Rule

1086. We affirm the orders waiving the jurisdiction of the juvenile court.

> *As to Case No. 380: motion to dismiss appeal denied; in each of Case No. 005579, No. 005580, No. 006509, and No. 006510 below, waiver of jurisdiction and order that Trader be held for action under the regular criminal procedures affirmed.*
> *Case remanded for further proceedings.[22]*
> *As to Case No. 589 appeal dismissed; costs to be paid by the Mayor and City Council of Baltimore.*
> *Mandate in each case to issue forthwith.*

---

22. The appeal in No. 380 was prosecuted by Trader as an indigent.