IN THE MATTER OF LESTER LEE MILES ET AL.

[No. 311, September Term, 1972.]

*Decided September 11, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SMITH and DIGGES, JJ.

*Mary Elizabeth Kurz, Assistant Attorney General,* with

whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Marshall Feldman* and *David W. M. Jacobs, Assistant State's Attorneys for Baltimore City*, on the brief, for the State of Maryland.

*Peter S. Smith*, with whom were *Charles F. Morgan* and *Gerald M. Meola* on the brief; *Mark Colvin* and *Joshua T. Gillelan, II* appearing on the brief, pursuant to Rule 18, governing admission to the Bar of Maryland, for Messrs. Dawson, Davis, Miles and Gibson.

McWILLIAMS, J., delivered the opinion of the Court.

Simply put, Miles, Gibson, Davis and Dawson (appellees),[1] severally convicted of robbery and burglary in 1968 when each of them was 17 years of age, and thereafter sentenced to terms ranging from 10 to 50 years, now contend they should be turned loose because the waiver hearing we held to be essential in *Franklin v. State*, 264 Md. 62, 285 A. 2d 616 (1972), did not take place until after they became 21. Put even more simply (assuming they are right) if one can evade apprehension until after reaching 21, one cannot be prosecuted for an armed robbery, or a dozen armed robberies, committed before reaching 18. In the Circuit Court of Baltimore City, Division of Juvenile Causes,[2] Rasin, J.,[3] on 25 August 1972, waived jurisdiction to the Criminal Court in respect of Davis and Dawson. Two months later, on 30 October, Hammerman, J., granted the motions to dismiss for lack of jurisdiction filed by Miles and Gibson. Davis and Dawson have appealed from Judge Rasin's order; the State of Maryland has appealed from Judge Hammerman's order. On 9 January 1973, before briefs were filed in the Court of

---

1. Although Davis and Dawson are actually appellants, it will be less confusing if we call all of them appellees whenever we refer to them collectively.

2. Conveniently, albeit imprecisely, referred to in the record as the "Juvenile Court." From time to time we shall do likewise.

3. George B. Rasin, Jr., Chief Judge of the Second Judicial Circuit and Circuit Administrative Judge, at the time specially assigned to the Circuit Court of Baltimore City, Division of Juvenile Causes.

Special Appeals, the State filed a "Consolidated Petition for a Writ of Certiorari." Over the opposition of the appellees and pursuant to Code (1957, 1968 Repl. Vol., 1972 Cum. Supp.), Art. 5, § 21B, we granted certiorari, directed the consolidation of the four cases and ordered the transfer of the case to the regular docket.

A proper consideration of the contentions of the parties requires some familiarity with the climate in which they arose. Chapter 818 of the Laws of Maryland of 1943 conferred jurisdiction in juvenile causes upon the Circuit Court of Baltimore City in respect of persons "under the age of *sixteen* years." (Emphasis added.) Chapter 797 of the Laws of 1945 conferred jurisdiction in juvenile causes upon the circuit courts of the counties in respect of persons "under the age of *eighteen* (18) years." (Emphasis added.) Section 1, paragraph 48U provided that the act (Ch. 797) "shall not apply to the City of Baltimore, or Washington, Allegany or Montgomery Counties." The exemption in respect of the counties has since been eliminated. This disparity—16 in Baltimore City, 18 in the counties—continued until it was declared to be unconstitutional in *Long v. Robinson*, 316 F. Supp. 22 (D. Md. 1970), *affd* 436 F. 2d 1116 (4th Cir. 1971).[4]

One year (less eight days) later we decided *Franklin v. State*, 264 Md. 62, 285 A. 2d 616 (1972). Franklin was convicted of armed robbery in the Criminal Court of Baltimore, at the age of 17. In 1969 when the offense was committed he was 16. Since he was not a juvenile in Baltimore City there was no waiver of jurisdiction, Code (1971 Repl. Vol.), Art. 26, § 70-16, by the Juvenile Court. After *Long* and *Greene v. State*, 11 Md. App. 106, 273 A. 2d 830 (1971), Franklin appealed his conviction to the Court of Special Appeals which remanded his case for the purpose of having a waiver hearing. The hearing was held and a waiver order was entered. Upon the return of the appeal the Court of Special Appeals affirmed the judgment of the Criminal Court. We reversed the judgment of the Court of Special

---

4. See also Ch. 730 of the Laws of 1970.
For Montgomery County see Code (1973 Repl. Vol.), Art. 26, § 72 et seq.

Appeals; we vacated the judgment of the Criminal Court; we remanded the case to the Juvenile Court "in order that it may determine whether or not a waiver should be ordered." And, we added, "[i]f the Juvenile Court waives, Franklin may be tried by the Criminal Court; if it does not waive, the Juvenile Court will follow the normal procedures prescribed by the statutes for the care and treatment of juveniles under the circumstances." Franklin will not become 21 until 19 October 1973.

Chief Judge Hammond, writing for the Court, said:

"We have concluded that the Criminal Court had neither the right nor the power to try a juvenile who had not been sent to it for trial by the Juvenile Court under the statutory waiver procedures. True, when Franklin was tried the statute law of Maryland on its face and the State and Federal decisions as to legislatively declared geographical classifications in Maryland made it appear that the Criminal Court of Baltimore had jurisdiction to try him on the basis that, for the purposes of trial, he was an adult. But as *Greene*, in reliance on the *Long* decisions, held, he was not such an adult but a child, a juvenile, and as such one who could not be tried in Maryland by a criminal court unless — and only unless — the Juvenile Court so ordered after a proper waiver hearing.

"Since the legislature expressly took away the right and the power of the criminal court to try a juvenile unless the Juvenile Court waives in favor of a criminal trial, the trial of Franklin was no more than form — it had no substance and no validity and the conviction it produced was a nullity. . . . In our view it could not have life breathed into it, and it could not be made valid and effective *nunc pro tunc* by a waiver made by the Juvenile Court after the trial had been had. . . ." 264 Md. at 67.

This then was the climate prevailing in July 1972 when the

appellees filed petitions for the writ of habeas corpus. After hearings their convictions were vacated and each was remanded to the custody of the Juvenile Court for whatever action deemed appropriate by that court. The State, at or about this time, filed juvenile petitions against each of the appellees and requested waiver of jurisdiction hearings. They (appellees) filed motions to dismiss the juvenile petitions principally on the ground that, each of them having become 21 before the filing of the petitions, the court was without jurisdiction to conduct any proceedings.

The cases of Dawson and Davis came on for a hearing before Judge Rasin on 25 August 1972. He denied the motions and waived jurisdiction. The Miles and Gibson cases came on for a hearing before Judge Hammerman on 30 October 1972. He granted both motions to dismiss.

The appellees have set forth their many contentions in a brief which, to be sure, is a truly formidable dialectical exercise. The State has responded in kind. At the core of the appellees' position is the notion that the petitions filed on 31 July 1972 did not confer jurisdiction upon the Juvenile Court for any purpose. Not having jurisdiction, they argue, the court could not waive it. But, they say, they cannot be proceeded against in the criminal court without a waiver and since there now can be no waiver they must be released.[5]

While each of the four petitions recites that "the following named child" is under the age of 18, the date of birth shown makes it entirely clear that the "named child" is in fact 21. We must agree that the court did not acquire jurisdiction over the appellees for any purpose except the transfer required by Maryland Rule 515 a, *infra*. To hold otherwise would render meaningless the language of Code (1972 Repl. Vol.), Art. 26, § 70-3, which provides, in part, that "[j]urisdiction obtained by the court in the case of a child shall be retained by it for the purpose of this subtitle until he becomes twenty-one years of age . . ." and the language of § 70-20(a) which provides, in part, that "[i]n no event shall any order or renewal thereof be effective beyond the

---

5. Judge Hammerman ordered the release of Miles on 30 October 1972.

twenty-first birthday of a child." The State makes a quite respectable argument to the contrary but we cannot escape the plain meaning of the words used in the statute. It well might be that an enlargement of the court's jurisdiction in respect of waivers would be desirable and we have little doubt that the legislature will give the matter its early consideration.

It must not be supposed that the administration of the criminal laws is a sort of game in which the time when and by whom a waiver hearing should be held is equated with such niceties as touching each base or how high an arm should be raised to signal a fair catch. Society has a fundamental right to have transgressors stand before the bar of justice upon the merits of the cause. *McIntyre v. State*, 17 Md. App. 526, 534, 302 A. 2d 672 (1973). The Supreme Court has said that it would be "a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in proceedings leading to conviction." *United States v. Tateo*, 377 U. S. 463, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964). In the words of Mr. Justice Cardozo, "[j]ustice though due to the accused is due to the accuser also." *Snyder v. Massachusetts*, 291 U. S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934). It does not follow, because in these circumstances the Juvenile Court may be powerless to act, that other courts are similarly impotent. Indeed we think the courts of equity of this state are well equipped to resolve the question whether waiver would have been appropriate when the hearing would ordinarily have taken place if the appellees had been brought before the Juvenile Court in the first place. There is nothing new about the notion that such a determination can be made by a court untrammeled by the jurisdictional limitations hedging about the Juvenile Court. In *Kent v. United States*, 383 U. S. 541, 564-65, 86 S. Ct. 1045, 16 L.Ed.2d 84 (1966), Mr. Justice Fortas said, for the Court:

> "Ordinarily we would reverse the Court of Appeals and direct the District Court [for the

District of Columbia] to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. See *Black v. United States, supra* [355 F. 2d 104 (D.C. 1965)]. However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question by the Juvenile Court, it is urged by petitioner that the conviction should be vacated and the indictment dismissed. In the circumstances of this case, and in light of the remedy which the Court of Appeals fashioned in *Black, supra,* we do not consider it appropriate to grant this drastic relief. Accordingly, we vacate the order of the Court of Appeals and the judgment of the District Court and remand the case to the District Court for a hearing *de novo* on waiver, consistent with this opinion. If that court finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment. Cf. *Black v. United States, supra.*"

In *Kemplen v. State of Maryland,* 428 F. 2d 169, 178 (4th Cir. 1970), the court said:

". . . Without delimiting the range of remedies left open by Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we think the proper remedy for this petitioner, on the facts of this case, will be the reconstruction in the Maryland courts, or failing that in the United States District Court, of the circumstances bearing on the waiver question and a determination *nunc*

*pro tunc* of what the juvenile court judge would probably have done in light of all the information then available that might reasonably have been proffered by competent counsel."

Kemplen was 21, probably 22, when *Kemplen* was decided.

One might say, by way of rebuttal, that in *Franklin* we remanded the case to the Juvenile Court rather than to the equity court, and that is indeed true. It will be recalled, however, that Franklin, at the time, was under 21; indeed, he is not yet 21. We should point out also that Franklin's waiver hearing, as ordered by this Court, would have taken place about three years after his conviction.

We shall vacate Judge Rasin's orders of 25 August 1972 waiving jurisdiction over Dawson and Davis. We shall vacate also Judge Hammerman's orders of 30 October 1972 dismissing the State's juvenile petition in the case of Miles and Gibson and ordering the release of Miles. If this should seem anomalous, in light of the fact that the learned judge correctly decided he had no jurisdiction, it should be observed that Rule 515 a [6] requires, in these circumstances, the transfer of cases "to such proper court or docket, either of equity or law, in the same county, as the nature thereof may require." We think the State was entitled to the benefit of that rule. Pursuant to Rule 875 a we shall remand the four cases to the Circuit Court of Baltimore City (not the Division of Juvenile Causes) in order that the chancellor may determine whether waivers should or should not have been ordered. If the chancellor concludes that a waiver should have been ordered in any one or more of the four cases the named appellee may be tried de novo in the Criminal Court. In any case in which the chancellor concludes that a waiver should have been refused the named

---

6. "Where it shall appear that the plaintiff is or may be entitled to some relief or remedy, but not in the particular court, or on the side of the court in which the action is brought or the relief is prayed, the plaintiff shall not on that account be nonsuited or the action dismissed; but the action shall be transferred by an order to such proper court or docket, either of equity or law, in the same county, as the nature thereof may require, and upon such terms as to the payment of costs as the court may order."

appellee should be released, unless, of course, he is being legally detained for other reasons.

We think it is desirable, in light of the odd circumstances common to all four cases, to chart a course for the chancellor, marking the more hazardous of the shoals to be avoided. There should be four separate and distinct cases each of which should be initiated by a petition filed by the State's Attorney within 30 days after the issuance of the mandate. The waiver hearings should be scheduled promptly and all of them should be completed within 90 days after the issuance of the mandate. They should be heard separately unless counsel and the chancellor agree to a consolidation of two or more. The hearings should be adversary in nature and the burden shall be on the State, in each case, to prove by a preponderance of the evidence that a waiver should be ordered.

Unless counsel can agree upon a date when the waiver hearings would probably have taken place the chancellor will select a date in 1968, and he will be careful to exclude from the record and from his deliberations any evidence of anything that happened after the date selected or agreed upon.

The chancellor will renew his acquaintance with the provisions of Code (1973 Repl. Vol.), Art. 26, §§ 70 through 70-26, keeping foremost in mind the provisions of § 70-16(b); he will do likewise in respect of Rules 901 through 926, noting well the requirements of Rule 911. He will refresh his recollection of the dictates, the caveats and the comments contained in *Kent, supra; Kemplen, supra; Franklin, supra; Haziel v. United States*, 404 F. 2d 1275 (D.C. Cir. 1968); *James v. Cox*, 323 F. Supp. 15 (D.C. Va. 1971); and *Hazell v. State*, 12 Md. App. 144, 277 A. 2d 639, *cert. den.* 263 Md. 715 (1971).

The appellees put it rather strongly that inevitably there will be a heavy prejudice in favor of waiver because the only alternative will be their release. Also they make much of the notion that the passage of time, four years or more, will render impossible a "reconstruction of evidence necessary to

a fair and meaningful consideration of waiver." The argument has a certain emotional validity but we do not find it persuasive, because we must assume that the chancellor will resist any pressures arising out of the prejudice appellees say is inevitable. We minimize neither the difficulty nor the delicacy of the task we have assigned to him but we cannot say it could have been given into better or more capable hands. But should he fail in this respect and in a measure connoting caprice, bias or simple ineptitude, appeal will be available, ultimately. *See* Chap. 773 of the Laws of Maryland of 1973, effective 1 July 1973.

The appellees contend they have been denied their constitutional right to a speedy trial. The issue thus presented does not require our consideration at this time and we shall not undertake to deal with it. Nor should the chancellor allow it to influence his deliberations. In any case that may be tried de novo in the Criminal Court the speedy trial issue will surely have a portentous loom and there is little doubt it will require the best efforts of the trial judge to resolve it correctly.

The motion of Miles and Gibson to dismiss the State's appeal is denied. The consolidated cases are properly before this Court. Code (1957, 1968 Repl. Vol., 1972 Cum. Supp.), Art. 5, § 21B.

We make no mention of the appellees' remaining contentions, not because we have not considered them but because the decision announced today makes unnecessary any disposition of them.

> *Orders of 25 August 1972, in respect of appellants Dawson and Davis, vacated.*
>
> *Orders of 30 October 1972, in respect of the appellees Miles and Gibson, vacated.*

660

*Cases remanded to the Circuit Court of Baltimore City for the hearings and determinations described in the opinion and to be conducted conformable thereto.*

*Costs to be paid by the State of Maryland.*

## ON MOTION FOR REARGUMENT

PER CURIAM:

In their motion for reargument appellees insist that Maryland Rule 1 a 1 precludes the application of Rule 515 a "to the proceedings dealt with in Chapters 700 [Criminal Causes], 800 [Appeals to the Court of Appeals], 900 [Juvenile Causes] and 1000 [Appeals to the Court of Special Appeals]." We see it differently. Since the Circuit Court of Baltimore City, Division of Juvenile Causes, lacked jurisdiction to entertain the State's petitions there could not have been a "proceeding dealt with" in Chapter 900. Nor was there a "proceeding dealt with" in Chapter 700. The "proceeding" confronting the court was an unusual hybrid born of *Kent* and *Kemplen.* We think Rule 515 a was applicable and, we repeat, "the State was entitled to the benefit of" it.

The motion for reargument will be denied.

*Motion denied.*