THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM EMERY STOCKS, Defendant-Appellant.

Fifth District    No. 80-204

Opinion filed February 26, 1981.

Paul & Clayton, of Marion, for appellant.

Charles R. Garnati, State's Attorney, of Marion (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

The defendant, a 16-year-old minor, was taken into custody on February 9, 1979, in Williamson County for the murder of his father. A juvenile petition was filed alleging four counts of murder. A detention hearing was held, the minor was ordered detained, a motion was filed by the State's Attorney to transfer the minor to the adult court, a hearing was held, the motion was allowed, an information was filed, the defendant pleaded not guilty, demanded a trial by jury, was tried, found guilty and sentenced to 20 years in the Department of Corrections.

*The chronological order of events:*

February 9, 1979: minor arrested.

February 13, 1979: petition filed in the juvenile court for four counts of murder.

February 14, 1979: detention hearing was held, minor ordered detained.

February 14, 1979: motion to remove from prosecution under the Juvenile Court Act filed by the State's Attorney. The motion to remove from prosecution under the Juvenile Court Act was set for hearing on March 22, 1979.

February 22, 1979: case was called; appearances made by the parties. Motion to transfer set for hearing on February 28, 1979.

February 28, 1979: parties appear. Case was continued pending probation officer's report. Case was set for hearing on March 7, 1979.

March 7, 1979: the motion to transfer was heard; motion was allowed. Order of transfer was signed.

March 8, 1979: information was filed in case No. 79-CF-28 charging defendant with murder.

March 9, 1979: juvenile petition dismissed on motion of State's Attorney.

March 13, 1979: motion for rehearing on transfer to adult court filed by minor's attorney.

March 15, 1979: motion for rehearing argued and denied in the juvenile case.

March 3, 1980: selection of jury commenced.

March 6, 1980: jury returned guilty verdict.

March 31, 1980: presentence report was filed.

April 1, 1980: motion for new trial filed and motion to arrest judgment filed.

May 6, 1980: judgment and sentence order filed sentencing the defendant to 20 years in the Illinois Department of Corrections.

*Defendant's points on appeal:*

1. Section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7) is unconstitutional.

2. The defendant was denied due process in the transfer hearing.

3. The standard of proof at a transfer hearing should be "clear and convincing" evidence.

4. The juvenile court judge abused his discretion in allowing the transfer.

5. The evidence at the trial was insufficient to prove the defendant guilty beyond a reasonable doubt.

6. The trial court erred in admitting certain photographs in evidence.

*Evidence at the detention hearing:*

At the detention hearing, the People called several witnesses. A review of the testimony of the witnesses at the detention hearing is in order.

(a) Roger Odum, an investigator with the Williamson County Sheriff's Department, testified that on February 9, 1979, he investigated the killing in Marion, Illinois. He described his observations at the scene. At the Williamson County Sheriff's Department, in the presence of the minor's mother, a statement was taken from the minor by the witness. The minor told him that he had accidentally shot his father and further testified "Billy said that him and his father were alone at the house and that they had been in the CB room talking, that they were getting ready to go to West Frankfort to put CB antennas or something on his father's truck. And that their conversation, they had been talking about dying. And Billy states that he went into the living room and was watching tv, said he was watching Uncle Briggs on television, and that he wanted to scare his father and he said he was setting in a chair in the corner of the room, with the .410 shotgun propped on the foot stool which was turned on end and when his father came through the door he pulled the trigger. Billy pulled the trigger, said he wanted to hear a click and said, I wanted to scare the crap out of my father."

(b) Ronald H. Lee testified that he was a detective for the Williamson County Detective Unit, that he participated in the investigation of the killing of the defendant's father and that he was present at the autopsy on William Stocks, the deceased.

Over objections by the defendant's attorney, he was allowed to testify that he saw Dr. Thompson at the autopsy and "that shotgun pellets had entered the throat area, throat and chin area of Mr. Stocks and had pierced the larynx, what I would determine as the wind pipe and also the arteries on the side of the wind pipe and blood had flown through his wind pipe and that vomit from his stomach had come up, going into his lungs, he had suffocated."

The defendant's attorney did not cross-examine witness Odum or Lee.

(c) Edward Boyd testified that he was a bus driver for R. W. Harmon

and Sons and that the minor rode his bus to Marion High School. He further testified that on or about May 24, 1978, the minor was involved in an altercation with a girl, that he broke up the altercation and that the minor "got mad and began to reach into his pockets and then he didn't find nothing and he begin to holler and run up and down the aisle of the bus, asking the children on the bus or the boys on the bus to give him a knife, he said, "I will slit his throat, cut his guts out."

The defendant's attorney cross-examined this witness.

(d) LeRoy Anderson, assistant principal at the Marion High School, was called, and testified concerning an incident the minor was involved in at the high school concerning pulling of a fire alarm.

The minor's attorney cross-examined this witness.

(e) Dan McClusky, a deputy sheriff of Williamson County, testified that on November 25, 1978, he received a report concerning a shooting in Johnston City and in investigating that incident was told by the mother of the alleged victim that her son had been fishing at a fishing hole near Johnston City, that two young white males came through the field while he was fishing there and Billy Stocks "drew down on him with a shotgun and shot with the shot striking very near him." He was also told by the victim's mother that she didn't want to press any charges, but the witness stated that he would make a report and turn it over to the juvenile authorities. The witness did not know if any juvenile charges were filed.

The attorney for the defendant cross-examined this witness.

(f) Mark Forth testified that he was a juvenile probation officer of Williamson County approximately one year, that he investigated the bus incident and the shooting incident in Johnston City, that he had Billy and his mother in his office for a preliminary conference but that no charges were filed. He also testified concerning two other complaints he had concerning the defendant. One involved joyriding in a pickup truck and the other involved criminal damage to parking meters in Johnston City.

The attorney for the defendant cross-examined this witness.

The People rested and the defendant then called witnesses on his behalf:

(a) Ronald L. Lee testified concerning his investigation of the parking meter incident in Johnston City, Illinois. He testified that Billy Stocks and two other minors were involved. The two minors were given polygraph examinations and they implicated Billy Stocks during the polygraph examination.

(b) Mike Herman testified he was a community worker for Franklin-Williamson County Services for eight months and he had been counselling Billy Stocks on a regular basis since about June 9, 1978. In this time the defendant was examined by a psychiatrist and in general terms he testified

concerning Billy's learning disability known as minimal brain dysfunction. He further testified he had been "interacting" with Billy and his parents and from his general observations, Billy and his parents had a very good relationship. He further testified concerning his observations of latent or overt hostility by Billy toward his father and that he had witnessed "verbal aggression." He testified in his opinion Billy could live at home under the supervision of his mother.

(c) Vera Jean Stocks testified that she was the mother of Billy Stocks. Billy had had problems since birth because "Billy was born with the cord wrapped around his neck," that Billy was examined by a child psychologist when he was in kindergarten and was placed in special education. Billy had never been declared delinquent or in need of supervision, and she was of the opinion Billy could live in the community without being detained. At the conclusion of the detention hearing the juvenile judge ordered the minor detained.

*Evidence at the hearing on the motion to remove from prosecution under Juvenile Court Act*:

At the transfer hearing the State's Attorney moved "that the Court take judicial notice of all of the proceedings and testimony that was given in the detention hearing held in this case previously." Over objection of the defendant's attorney this motion was allowed. The trial court in his ruling stated, "This particular Court heard the evidence on 2/14/79 and is going to take judicial notice of what was stated there and whether or not it will be admitted is ruled as being admitted, that the Court would advise that it will give weight as the Court sees fit, the weight should be to the things and matters stated there." At the transfer hearing the following witnesses testified:

(a) Roger Odum was called and was allowed to testify as to a conversation that he had with Robert Henry, a 15-year-old friend of the defendant. He testified that Mr. Henry related to him a certain telephone conversation he had with the defendant on February 9, 1979, at approximately 6:30 p.m. wherein the defendant told Henry "he was going to shoot his dad, going to get the keys to the truck and $130 and ask if Henry could get any money and that they would go to St. Louis."

The defendant's attorney did not cross-examine this witness.

(b) Mark Forth was called and testified that he prepared a presentence investigation in this case and further testified concerning facilities available to the juvenile court in the case.

The attorney for the defendant did not cross-examine this witness at this hearing.

The attorney for the defendant did request the court to accept the report prepared by the probation office and to consider that as evidence

before the court on the question of whether or not the juvenile should be transferred. The court advised the attorney for the defendant that he would do so.

Witnesses were called on behalf of the defendant:

(a) Tom Stocks, a 15-year-old brother of the defendant, testified concerning the telephone conversation Billy Stocks had with Robert Henry in that he could hear what his brother said and at no time did his brother say anything about shooting his father.

(b) Mike Herman testified he had never known Billy to be of violent nature. It was not consistent with Billy's behavior to be physically violent.

The court made findings concerning his reasons for allowing the motion to transfer. Among these findings were a grand jury would "find and make an indictment," that the alleged offense was committed in an "aggressive and premeditative manner," that the minor was 16 years of age at the time of the commission of the crime and would probably be 17 at the time of the trial, findings concerning the previous history of the minor, findings concerning the facilities that were available for the minor, that it was in the best interest of the minor and the security of the public that he continue in custody or under supervision for a period extending beyond his minority, that it was in the best interest of the minor and the public that the court not object to transferring "this case from the Juvenile Court to the Adult Criminal Court."

OPINION:

■■ This court is invited by the defendant to overrule the Supreme Court of the State of Illinois in *People v. Taylor* (1979), 76 Ill. 2d 289. We decline the invitation. In *Taylor* the supreme court of this State upheld the constitutionality of the transfer provisions of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—7).

This statute provides:

"(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return

an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. * * *"

The court in interpreting this statute stated that the role of the appellate court was to determine if the juvenile judge had abused his discretion. It specifically rejected the argument that the State should prove the transfer would be in the best interest of the minor and the public by "clear and convincing evidence." The defendant in this case argues that the supreme court did not have available to it at the time of *Taylor* the case of *Addington v. Texas* (1979), 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804. As we read *Addington* the Supreme Court of the United States set the standard for commitment under mental health codes as "clear and convincing." We, in light of the Supreme Court of the State of Illinois' rejection of the "clear and convincing" evidence quantum, feel that *Addington* adds nothing to the *Taylor* opinion.

In *Taylor*, the supreme court also rejected the argument that hearsay is not admissible at a transfer hearing. The court stated, "The use of documentary or testimonial evidence of a reliable nature, even though hearsay, constitutes a much less time-consuming method of proof very nearly essential to this type of hearing. Its use in that context is not, in our judgment, constitutionally impermissible." *People v. Taylor* (1979), 76 Ill. 2d 289, 305.

■■ The defendant argues evidence presented at a detention hearing is not the proper object of judicial notice at a transfer hearing. In *In re Brown* (1978), 71 Ill. 2d 151, the court held a hearing on a motion to suppress evidence and after denying the motion, ordered the parties to proceed to trial on the merits. At the hearing on the merits the People failed to prove the age of the minor, although the minor had previously on the same day testified that he was 15 years of age. The supreme court in addressing this problem stated, "Clearly, a court may and should take judicial notice of other proceedings in the same case which is before it and the facts established therein. *People v. Davis* (1976), 65 Ill. 2d 157, 161; *City of East St. Louis v. Touchett* (1958), 14 Ill. 2d 243, 249; *State Farm Mutual Automobile Insurance Co. v. Grebner* (1971), 132 Ill. App. 2d 234, 237; *Nogle v. Nogle* (1964), 53 Ill. App. 2d 457, 459." (71 Ill. 2d 151, 155. See also Cleary and Graham, Handbook on Illinois Evidence §202.2 (1979).) The doctrine of judicial notice of evidence taken in the same case

before the same judge is one of common sense. In the detention hearing and the transfer hearing the defendant was afforded an opportunity to cross-examine witnesses. He chose to cross-examine some witnesses at the detention hearing and not others. At the transfer hearing he could have subpoenaed any of the witnesses presented by the People if he felt further cross-examination necessary. Some of the witnesses at the detention hearing also testified at the transfer hearing. The defendant cannot now complain that he was not afforded adequate opportunity to cross-examine witnesses.

The defendant also argues that the transfer was invalid as an abuse of discretion by the juvenile court judge. " 'The essential scheme of the Juvenile Court act is * * * that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases. * * * The divide between the Juvenile Court with its promise of non-punitive rehabilitation and the harsher world of the District Court is one not lightly to be crossed. * * *' " *Haziel v. United States* (D.C. Cir. 1968), 404 F.2d 1275, 1278.

"Treatment as a juvenile is not a statutory bounty which can be withdrawn lightly." (*Black v. United States* (D.C. Cir. 1965), 355 F.2d 104, 105.) The transfer hearing is "a critically important proceeding." *United States v. Kent* (1966), 383 U.S. 541, 560, 16 L. Ed. 2d 84, 97, 86 S. Ct. 1045, 1057.) In *Kent*, the court stated, "We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." 343 U.S. 541, 562, 16 L. Ed. 2d 84, 97-98, 86 S. Ct. 1045, 1057.

The statutory scheme adopted by the State of Illinois (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3)) makes the determination as to whether or not a minor is to be prosecuted under the Juvenile Court Act or under the criminal laws of this State in the juvenile court judge.

Paragraph 3(a) of the aforementioned statute states, "The rules of evidence shall be the same as under Section 5—1 [par. 705—1] of this Act." Section 5—1 concerns itself with the evidence to be considered at the dispositional hearing. It states, "All evidence helpful in determining this question, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." Ill. Rev. Stat. 1977, ch. 37, par. 705—1(1).

When you separate the wheat from the chaff, what we are really talking about in a transfer hearing in the Juvenile Court Act is whether or not in a particular case the minor has been afforded a due process hearing. "Once it is determined that due process applies, the question remains what process is due * * * due process is flexible and calls for such

procedural protections as the particular situation demands." *Morrisey v. Brewer* (1972), 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600.

■■ We have reviewed the record of both hearings and are of the opinion that the juvenile judge in this case afforded the minor a hearing that conformed to the constitutional requirements of due process.

The defendant raises two points concerning the trial in this case. He maintains that the evidence at the trial was insufficient to prove the guilt of the defendant beyond a reasonable doubt, in that it fails to establish the defendant's knowledge of the strong probability of death or bodily harm. We have reviewed the evidence in this case and have concluded that the point is not well taken. There is evidence to show that the defendant told Robert Henry that he was going to shoot his father, take his truck, and go to St. Louis. Henry also testified that earlier in the day the defendant and his sister were having an argument, calling each other names, that his father would not let him go to the skating rink "because him and his sister got in a fight and they were calling each other names and his dad wouldn't let him go." There was further testimony that the defendant made a statement to law enforcement officers, after having been given the "Miranda warnings," that he was sitting in the living room of the home, that his father and he had been discussing about dying, that he had loaded his .410 shotgun and as his father came into the kitchen and was about half-way across the kitchen floor he pulled the trigger on the .410 to hear it "click." It is difficult to comprehend that a 16-year-old boy who owned a .410 shotgun, had loaded it, pointed it at his father and pulled the trigger, would not know that this conduct would create a strong probability of death or great bodily harm.

■■ Defendant also complains about certain photographs that were admitted into evidence, in that they were gruesome and unduly influenced the jury. Two of the photographs were closeup views of the deceased's face and chest area showing where the pellets from the shotgun hit the deceased, while the third photograph showed the body, fully clothed, just immediately prior to the autopsy's being performed. As a general rule, the admission of photographs is in the sound discretion of the trial judge. (*People v. Foster* (1979), 76 Ill. 2d 365.) In this case four colored photographs of the decedent's decaying and dismembered body were admitted at the trial which were "quite gruesome." Furthermore, if the photographs are probative of the cause of death, depict the amount of force used in the murder or tend to corroborate or not to corroborate testimony of the pathologist and other witnesses, then they are admissible. *People v. Lindgren* (1980), 79 Ill. 2d 129.

■■ As a general rule murder is a gruesome affair and when the means of accomplishing the task is a shotgun, it becomes even more gruesome. We

are of the opinion that the trial court did not abuse his discretion in the admission of the photographs in question.

We have considered the other points raised by the defendant in this appeal, and we are of the opinion that they are without merit.

We affirm.

KASSERMAN, P. J., and KARNS, J., concur.