## IN RE: RANDOLPH T.

[No. 25, September Term, 1981.]

*Decided December 4, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Edwin H. Convey, Assistant Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here uphold against constitutional attack the requirement of Maryland Code (1974, 1977 Cum. Supp.) § 3-817 (c), Courts and Judicial Proceedings Article, that "a preponderance of the evidence" is the standard to be used by a trial judge in determining whether to waive juvenile jurisdiction. Accordingly, we shall affirm the judgment of the Court of Special Appeals.

Randolph T. was born January 24, 1963. Thus, he was just under seventeen years old on November 3, 1979, when an incident took place resulting in charges that he committed the delinquent acts of possessing an unregistered short-barreled shotgun in violation of Code (1957, 1976 Repl. Vol., 1976 Cum. Supp.) Art. 27, § 481C; carrying a handgun in violation of Code (1957, 1976 Repl. Vol.) Art. 27, § 36B; discharging a firearm within the city limits of Baltimore in violation of Baltimore City Code, Art. 19, § 112; and openly carrying a sawed-off shotgun in violation of Code (1957, 1976 Repl. Vol.) Art. 27, § 36 (a).

A petition alleging his delinquency was filed in the Circuit Court of Baltimore City, Division for Juvenile Causes, on December 26, 1979. On April 29, 1980, the State's Attorney for Baltimore City invoked the provisions of Code (1974, 1977 Cum. Supp.) § 3-817, Courts and Judicial Proceedings Article, and requested the court to waive juvenile jurisdiction.[1]

---

1. Section 3-817 states in its entirety:

"(a) The court may waive the exclusive jurisdiction conferred by § 3-804 with respect to a petition alleging delinquency by:

(1) A child who is 15 years old or older, or

(2) A child who has not reached his 15th birthday, but who is charged with committing an act which if committed by an adult, would be punishable by death or life imprisonment.

"(b) The court may not waive its jurisdiction until after it has conducted a waiver hearing, held prior to an adjudicatory hearing and after notice has been given to all parties as prescribed by the Maryland Rules. The waiver hearing is solely to determine whether the court should waive its jurisdiction.

"(c) The court may not waive its jurisdiction unless it determines, from a preponderance of the evidence presented at the hearing, that the child is an unfit subject for juvenile rehabilitative measures. For purposes of determining whether to waive its juris-

A hearing was held on June 9, 1980, at which time the court's exclusive original jurisdiction was waived and it was ordered that Randolph T. be held for action under the appropriate criminal procedure. Among other things, in determining whether to waive jurisdiction, the trial judge took into consideration the fact that the juvenile was already incarcerated while awaiting trial in the Criminal Court of Baltimore on a murder charge.[2] In response to a question from counsel, the judge indicated that he was using the preponderance of the evidence standard and that the nature of the events and the public safety were serious factors which he considered in determining whether to waive juvenile jurisdiction. He expressly rejected a contention that the decision in *Addington v. Texas,* 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979), required that he declare the Maryland act unconstitutional and that under the Due Process Clause

diction, the court shall assume that the child committed the delinquent act alleged.

"(d) In making its determination, the court shall consider the following criteria individually and in relation to each other on the record:

(1) Age of the child;

(2) Mental and physical condition of the child;

(3) The child's amenability to treatment in any institution, facility, or program available to delinquents;

(4) The nature of the offense and the child's alleged participation in it; and

(5) The public safety.

"(e) If the jurisdiction is waived, the court shall order the child held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult. The petition alleging delinquency shall be considered a charging document for purposes of detaining the child pending a bail hearing.

"(f) An order waiving jurisdiction is immediately appealable.

"(g) If the court has once waived its jurisdiction with respect to a child in accordance with this section, and that child is subsequently brought before the court on another charge of delinquency, the court may waive its jurisdiction in the subsequent proceeding after summary review."

**2.** Code (1974, 1977 Cum. Supp.) § 3-804 (d) (1), Courts and Judicial Proceedings Article, specifies that juvenile jurisdiction is not applicable to a child fourteen years old or older alleged to have done an act which if committed by an adult would be a crime punishable by death or life imprisonment.

of amend. XIV to the U.S. Const. the proper standard was proof beyond a reasonable doubt.

The Court of Special Appeals affirmed the judgment in an unreported opinion.[3] We granted the writ of certiorari in order that we might address the important public issue here involved.

The present Maryland statute relative to juvenile causes is embodied in Code (1974, 1980 Repl. Vol.) Subtitle 8, §§ 3-801 to -834, Courts and Judicial Proceedings Article.[4] Pursuant to the provisions of § 3-817, a court may waive its exclusive jurisdiction if it determines "from a preponderance of the evidence presented at the hearing, that the child is an unfit subject for juvenile rehabilitative measures." The statute sets forth a number of criteria to be considered by the trial judge as will be seen by reference to n.1. Although Maryland's virtually statewide juvenile law as enacted in 1945 and ultimately embodied in Code (1957) Art. 26, § 54 contained a provision for waiver, it did not set forth the standard to be used nor did it specify the required weight of the evidence.

Randolph first contends that § 3-817 (c), when it states that "[t]he court may not waive its jurisdiction unless it determines, from a preponderance of the evidence presented at the hearing, that the child is an unfit subject for juvenile rehabilitative measures," does not require the preponderance standard. He emphasizes the use of the word "may" and suggests that a higher standard of proof therefore is not forbidden. We understand the statute to be saying that if the judge finds from a preponderance of the evidence that

---

**3.** The Court of Special Appeals reached the same conclusion less than a month later in the case of *In re Bobby C.*, 48 Md. App. 249, 426 A.2d 435 (1981), a case involving precisely the same issue. Its reasons there were similar to the ones advanced in the unreported opinion in this case.

**4.** We set forth the evolution of the Maryland statutes pertaining to juvenile offenses and explained them somewhat in *Wiggins v. State*, 275 Md. 689, 692-98, 344 A.2d 80 (1975), and in *Matter of Anderson*, 272 Md. 85, 94-95, 321 A.2d 516, *appeal dismissed*, 419 U.S. 809 (1974), *cert. denied*, 421 U.S. 1000 (1975). See also Moylan, *Comments on the Juvenile Court*, 25 Md. L. Rev. 310 (1965). The most recent complete revision of the juvenile statute came by Ch. 554 of the Acts of 1975.

the child is an unfit subject for juvenile rehabilitative measures, then he is to bring his best judgment to bear in the weighing of the various factors. In other words, to borrow that said by Judge Orth for the court in *Matter of Murphy,* 15 Md. App. 434, 441, 445, 291 A.2d 867 (1972), the judge then is to "exercise ... [his] sound judicial discretion." Moreover, as Judge Orth, then Chief Judge of the Court of Special Appeals, observed for that court in *Matter of Trader,* 20 Md. App. 1, 315 A.2d 528, *rev'd on other grounds,* 272 Md. 364, 325 A.2d 398 (1974):

> "Not all of the factors ... need be resolved against the juvenile to justify a waiver. *Hazell v. State,* 12 Md. App. 144, 155 [, 277 A.2d 639, *cert. denied,* 263 Md. 715 (1971)]. The court is not required to make an arithmetic-type calculation as to the weight it assigns each factor. The general rule is that a waiver will be upheld where a preponderance of the legally sufficient evidence shows that such a determination is proper in the light of the factors to be considered. *Matter of Barker,* 17 Md. App. 714, 721 [, 305 A.2d 211 (1973)]; *Matter of Johnson,* 17 Md. App. 705 [, 304 A.2d 859 (1973)]." 20 Md. App. at 14.

A preponderance of the evidence is the standard specified by the statute.

Randolph next contends that by virtue of the Supreme Court's holding in *Addington,* the State is bound to prove beyond a reasonable doubt that he is an unfit subject for juvenile rehabilitative measures, and that waiver of juvenile jurisdiction without such proof constitutes a denial of due process of law.[5] This contention is predicated upon the due process holdings in juvenile matters by the Supreme Court in *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); and *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

---

5. Judge Orth and Chief Judge Murphy, respectively, each then of the Court of Special Appeals, considered for that court and rejected contentions in *Matter of Waters,* 13 Md. App. 95, 97-98, 281 A.2d 560, *cert. denied,* 263

*Addington* is not a juvenile case. Chief Justice Burger opened the opinion by saying for the Court:

> "The question in this case is what standard of proof is required by the Fourteenth Amendment to the Constitution in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital." 441 U.S. at 419-20.

After reviewing the background of that particular case, the Court began its discussion by saying:

> "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' *In re Winship,* 397 U.S. 358, 370 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." 441 U.S. at 423.

The Court then discussed the three standards of proof:

> "At one end of the spectrum is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion.
>
> "In a criminal case, on the other hand, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards

---

Md. 722 (1971), and *Hazell v. State,* 12 Md. App. 144, 151-54, 277 A.2d 639, *cert. denied,* 263 Md. 715 (1971), that in a waiver proceeding proof beyond a reasonable doubt was required.

of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. In the administration of criminal justice, our society imposes almost the entire risk of error upon itself. This is accomplished by requiring under the Due Process Clause that the state prove the guilt of an accused beyond a reasonable doubt. *In re Winship, supra.*

"The intermediate standard, which usually employs some combination of the words 'clear,' 'cogent,' 'unequivocal' and 'convincing,' is less commonly used, but nonetheless 'is no stranger to the civil law.' *Woodby v. INS,* 385 U.S. 276, 285 (1966). See also C. McCormick, Evidence § 320 (1954); 9 J. Wigmore, Evidence § 2498 (3d ed. 1940). One typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. Similarly, this Court has used the 'clear, unequivocal and convincing' standard of proof to protect particularly important individual interests in various civil cases. *See, e.g., Woodby v. INS, supra,* at 285 (deportation); *Chaunt v. United States,* 364 U.S. 350, 353 (1960) (denaturalization); *Schneiderman v. United States,* 320 U.S. 118, 125, 159 (1943) (denaturalization)." 441 U.S. at 423-24.

In proceeding with its analysis and examination, the Court observed that it "must be mindful that the function of legal process is to minimize the risk of erroneous decisions"; that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"; that "involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others

can engender adverse social consequences to the individual" and "can have a very significant impact on the individual"; that the state "has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves"; and that "the state . . . has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." 441 U.S. at 425-26.

The Court rejected the preponderance standard because it "creates the risk of increasing the number of individuals erroneously committed . . . ." 441 U.S. at 426. It said, "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Id.* at 427.

Addington argued to the Court "that the rationale of the *Winship* holding that the criminal law standard of proof was required in a delinquency proceeding applies with equal force to a civil commitment proceeding." *Id.* at 427. The Court pointed out, "In a civil commitment state power is not exercised in a punitive sense." *Id.* at 428.

In "conclud[ing] that it is unnecessary to require states to apply the strict, criminal standard," the Court reasoned:

> "[T]he initial inquiry in a civil commitment proceeding is very different from the central issue in either a delinquency proceeding or a criminal prosecution. In the latter cases the basic issue is a straightforward factual question — did the accused commit the act alleged? There may be factual issues to resolve in a commitment proceeding, but the factual aspects represent only the beginning of the inquiry. Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists. Given the lack of certainty and the fallibility of psychiatric diagnosis, there is a serious question as to whether a state could ever

> prove beyond a reasonable doubt that an individual
> is both mentally ill and likely to be dangerous." 441
> U.S. at 429 (emphasis in original).

The Court then "turn[ed] to a middle level of burden of proof that strikes a fair balance between the rights of the individual and the legitimate concerns of the state," that of "clear and convincing" evidence, saying, "To meet due process demands, the standard has to inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases." *Id.* at 431-33.

Randolph has correctly referred to *Winship, Gault,* and *Kent.* They do not dictate, however, the result he desires here.

*Winship,* as petitioner notes, requires proof beyond a reasonable doubt at the adjudicatory stage of a juvenile proceeding where the juvenile is charged with an act which would be a crime if committed by an adult.

*Gault,* as summarized by Justice Brennan for the Court in *Winship,* "decided that, although the Fourteenth Amendment does not require that the hearing at [the adjudicatory] stage [of a juvenile proceeding] conform with all the requirements of a criminal trial or even of the usual administrative proceeding, the Due Process Clause does require application during the adjudicatory hearing of ' "the essentials of due process and fair treatment." ' *Id.,* at 30." 397 U.S. at 359.

*Kent* involved a waiver under the District of Columbia juvenile statute. The holding of the Court was "that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor" and "that an opportunity for a hearing which may be informal, must be given the child prior to entry of a waiver order," which "hearing must measure up to the essentials of due process and fair treatment." 383 U.S. at 561, 562.

Although a number of courts since *Addington* have referred to its standard of proof in various situations, we have been referred to no case nor have we encountered one

in which the standard of proof in juvenile waiver proceedings has been changed because of *Addington.* The cases decided since *Addington,* when coupled with the examples given by the Supreme Court in *Addington,* do help to make a picture of the proper circumstances for the use of its standard, however. *See, e.g., Decker v. Securities & Exch. Com'n,* 631 F.2d 1380, 1384 (10th Cir. 1980) (*Addington* "establishes a balancing approach for determining the appropriate standard." Preponderance of the evidence is the proper standard for determining whether an investment advisor has aided and abetted a violation of a section of the Investment Company Act prohibiting receipt of compensation in exchange for purchase or sale of property to or for an investment company.); *Duncan v. State,* 394 So. 2d 930, 932 (Ala. 1981) (On appeal from an order waiving juvenile jurisdiction, without discussion of *Addington,* the court said, "Since the purpose of a hearing of this type is not to determine guilt or innocence, the strict standard of proof beyond a reasonable doubt has been held not to apply. *Brown* [*v. State,* 353 So. 2d 1384 (Ala. 1977)]. The only standard which must be met is whether a reasonable man would believe the crime occurred and that the defendant committed it. . . . [T]his hearing was not one at which guilt had to be proven beyond a reasonable doubt."); *Matter of C.L.T.,* 597 P.2d 518, 525-26 (Alaska 1979) (Due Process Clause does not require a standard of proof greater than clear and convincing evidence when the State seeks to terminate parental rights because of unfitness.); *People v. Taylor,* 618 P.2d 1127, 1134-36 (Colo. 1980) (A trial court held that in a hearing to decide whether a person should be detained for short-term treatment at a mental hospital for a period not to exceed three months the "clear and convincing" standard of proof specified in the Colorado statute was inadequate to protect a person's right to procedural due process. The Colorado Supreme Court reversed, holding to the contrary.); *United States v. Edwards,* 430 A.2d 1321, 1339 (D.C. 1981) (Contention that procedural due process required proof beyond a reasonable doubt for a pretrial detention hearing was rejected.); *People v. Taylor,* 76 Ill. 2d 289, 303-04, 391 N.E.2d 366 (1979) (Case

was decided after *Addington* and involved a juvenile waiver but it does not mention *Addington*. Court rejected contention that proof by clear and convincing evidence was required.); *People v. Stocks,* 93 Ill. App. 3d 439, 444-45, 417 N.E.2d 1080 (1981) (Juvenile waiver proceeding which involved contention that the Illinois Supreme Court did not have *Addington* available to it when it decided *Taylor.* The court said, *"Addington* adds nothing to the *Taylor* opinion."); *People v. Cater,* 78 Ill. App. 3d 983, 986-87, 398 N.E.2d 28, *appeal dismissed,* 449 U.S. 802 (1980) (This is a juvenile waiver case which relied upon and quoted *Taylor* to the effect that under the Illinois statute "the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted."); *Matter of Joseph,* 416 N.E.2d 857, 863-64 (Ind. App. 1981) (Trial court denied a father's right to visitation with his child, who had been declared a ward of a county department of public welfare. He contended that the department should have been required to prove its case by "clear and convincing evidence," citing *Addington.* That standard was held not constitutionally required.); *Tucker v. Marion Cty. Dept. of Public Welfare,* 408 N.E.2d 814, 816, 819-20 (Ind. App. 1980) (It was contended that the preponderance of the evidence standard of proof was unconstitutional in the context of a proceeding to determine child neglect. Court cited *Addington* in holding, "The 'clear and convincing' evidence test results in a smaller risk that parental rights will be erroneously curtailed or even terminated, but a greater risk that the child, as a result of factual error, will be forced to remain in or return to a hostile, if not dangerous, family and home environment." The preponderance of the evidence standard was held to be the correct one.); *Com. v. A Juvenile,* 409 N.E.2d 197, 201-03 (Mass. App. 1980) (Without discussion of *Addington,* the court applied the Massachusetts statutory standard of "clear and convincing evidence" in a juvenile waiver proceeding.); *In re Penny N.,* 120 N.H. 269, 414 A.2d 541, 543 (1980) (Court, citing *Addington,* said that "in the absence of any legislative determination to the con-

trary, . . . the 'clear and convincing' standard of proof should apply" in case of application for sterilization of an incapacitated fourteen-year-old girl.); *In re Grady,* 85 N.J. 235, 426 A.2d 467, 483 (1981) (Without discussion of *Addington,* the court held that a trial court must be persuaded by clear and convincing proof that sterilization was in the best interests of a mentally incompetent person.); *Matter of Ralph M.,* 99 Misc. 2d 828, 417 N.Y.S.2d 608, 610-12, 616 (1979) (Court held, relying upon *Addington,* that clear and convincing standard, rather than preponderance of the evidence standard, was constitutionally mandated for purposes of commitment under a statute authorizing involuntary commitment of a juvenile for psychiatric hospitalization.); *In Interest of A.D.L.,* 301 N.W.2d 380, 383-84 (N.D. 1981) (Issue was the standard of proof to be applied for waiver of juvenile jurisdiction. *Addington* was not discussed, but *Winship* and *Kent* were. Reference was made to the fact that "[m]ost courts which have considered this issue have adopted the preponderance of the evidence standard of persuasion," citing such cases as *Matter of Miles,* 269 Md. 649, 309 A.2d 289 (1973). This standard was rejected because the North Dakota statute "specifies a 'reasonable grounds to believe' standard which [the North Dakota Supreme Court] ha[s] equated to a probable cause determination." The court said, "[T]he standard of proof denominated as proof beyond a reasonable doubt is inapplicable to waiver of jurisdiction proceedings because it applies in the context of a criminal trial and not to the initial stages of the criminal process."); *In Interest of G.M.,* 596 S.W.2d 846, 847 (Tex. 1980) (Applying *Addington,* the court held, despite a Texas statute calling for "a preponderance of the evidence," that "clear and convincing evidence" was required in all proceedings for involuntary termination of the parent-child relationship.); and *State v. C.J.S.,* 263 S.E.2d 899, 903, *overruled on other grounds, State v. Petry,* 273 S.E.2d 346 (W. Va. 1980) (Statute provided that the court might, "upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to

criminal jurisdiction if there [were] a probable cause to believe that [the child had committed certain crimes]." Without discussion of cases the court said, "The state has the burden of establishing by clear and convincing proof all the factors and grounds relied upon to obtain transfer.").

Randolph focuses on what he calls the five reasons or factors used by the Supreme Court "[i]n rejecting the beyond a reasonable doubt standard for civil commitments to mental hospitals," which he says "distinguished the type of decision involved in *Addington* from the types of decisions involved where the reasonable doubt standard is required." Thus, Randolph submits that "application of these ... factors to juvenile waiver indicates that the reasonable doubt standard would best meet the requirements of Due Process." We shall discuss them seriatim.

He first points out the Court said that in "a civil commitment state power is not exercised in a punitive sense." He "recognizes that, under § 3-817 (c), the juvenile's guilt or innocence and appropriate punishment are not at issue in a waiver proceeding." However, he contends that "[n]evertheless, a decision to waive jurisdiction leads to the punitive exercise of State power." What he seems to overlook is that there can be no such exercise until after a full trial in a court of law with a determination by the trier of fact that the accused is guilty beyond a reasonable doubt of any offense with which he is charged. Moreover, the accused has the full panoply of rights provided by the Constitution of the United States and that of the State of Maryland, including the right to assistance of counsel, which counsel will be provided at public expense should he be unable to afford the services of an attorney.

Secondly, Randolph says the Court recognized that "the 'beyond a reasonable doubt' standard historically has been reserved for criminal cases ... [in which it] is regarded as a critical part of the 'moral force of the criminal law' ...." On this point he argues, "Since a juvenile waiver changes a delinquency proceeding into a criminal prosecution, the child should have the protection of the reasonable doubt

standard." Applying the same argument one would be obliged to say that before a grand jury could indict it would be required to have proof beyond a reasonable doubt, since the indictment is the foundation for a criminal prosecution. Such is not the law and never has been.

Thirdly, he refers to the Court's statement that the "layers of professional review and observation of the patient's condition, and the concern of family and friends generally will provide continuous opportunities for an erroneous commitment to be corrected." On this point he states, "Although § 3-817 (c) allows immediate appeal of the waiver decision, a waiver decision generally is final and the juvenile does not have continuous opportunities to correct an erroneous waiver." That is true, but as we have already pointed out, the juvenile will not be subject to a sanction until after due trial.

Fourthly, Randolph refers to the Court's statement that "it is not true that the release of a genuinely mentally ill person is no worse for the individual than the failure to convict the guilty [since] [o]ne who is suffering from a debilitating mental illness and in need of treatment is neither wholly at liberty nor free of stigma." To this Randolph observes, "The Supreme Court's point is correct. But in a juvenile waiver proceeding, it is the State which is trying to remove the juvenile from the care of a system, based on the State's role as parens patriae, designed to protect the juvenile." As Chief Judge Gilbert recognized for the Court of Special Appeals in this case:

> "The stigma or labelling of a child as allegedly guilty of committing a criminal act does not attach automatically when a court determines that juvenile jurisdiction is waived, and the child is to be tried as an adult even though the waiver court presumes guilt for the purpose of the waiver hearing only. Rather, stigma results when the criminal court finds that the act was, in fact, committed by the one charged. *See generally In Re Winship, supra.*"

Finally, Randolph says the Supreme Court stated that "while a criminal prosecution involves the 'straightforward factual question — did the accused commit the act alleged?', a civil commitment involves the questions of whether a person is mentally ill and whether he is dangerous," questions which "usually turn on expert psychiatric testimony based on 'subjective analysis . . . filtered through the experience of the diagnostician.'" On this point he "concedes that the waiver decision is not as straightforward as the decision on guilt or innocence since it involves a prediction as to how the child will respond to juvenile treatment." He goes on, however, to contend that "the waiver decision [is not] as speculative as the civil commitment decision" since the "Judge must assume the child did the criminal act alleged in the juvenile delinquency petition." The contention that waiver to the regular criminal process means enhanced punishment was also discussed by Chief Judge Gilbert for the Court of Special Appeals:

> "That may or may not be so. The punishment, it is true, may be greater if meted by a criminal court, but there is no iron-clad rule that it shall or must be more severe than that imposed by the juvenile court. Additionally, waiver does not mean that a conviction inevitably will follow. The juvenile is cloaked with the same prescription of innocence that attends every other person appearing in the criminal courts. Waiver followed by a verdict of guilty does subject the child to having a criminal record, with all the detriments thereto appertaining."

See also the discussion for the Court of Special Appeals by Judge Lowe in *In re Bobby C.,* 48 Md. App. 249, 253-54, 426 A.2d 435 (1981).

The meaning of the term "preponderance of the evidence" is discussed in C. McCormick, *Evidence* § 339 (2d ed. Cleary 1972):

> "The most acceptable meaning to be given to the expression, proof by a preponderance, seems to be

proof which leads the jury to find that the existence of the contested fact is more probable than its nonexistence. Thus the preponderance of evidence becomes the trier's belief in the preponderance of probability." *Id.* at 794.

Thus, our statute is requesting that a judge certify, after weighing all of the evidence adduced before him and considering the factors mandated by the statute, that it is probable that the child is an unfit subject for juvenile rehabilitative measures. *See* the discussion in *Wiggins v. State,* 275 Md. 689, 708-09, 344 A.2d 80 (1975). In such a situation the juvenile is in a much different position than the individual about to be committed to a mental institution as in *Addington,* the parent to be permanently separated from his child, the young woman who is to be sterilized, or the persons subject to deportation or denaturalization which the Chief Justice mentioned in his discussion for the Court in *Addington.* The court proceeding in each of those cases is a final determination of the person's status. Randolph T. is being removed from the juvenile justice system, but that removal does not determine his ultimate status. That will come only after due trial.

We find nothing in *Addington* nor in any other case which requires the imposition of a reasonable doubt standard in this situation.

> *Judgment affirmed; appellant to pay the costs.*