## MATTER OF KING RICARDO MURPHY

[No. 647, September Term, 1971.]

\* \* \*

## MATTER OF LLOYD DAVID MURPHY

[No. 658, September Term, 1971.]

*Decided June 2, 1972.*

The causes were argued before ANDERSON, ORTH and MOYLAN, JJ.

*Autry N. Noblitt* for appellants in Nos. 647 and 658.

*Emory Alvin Plitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Charles S. Hamilton, III, Assistant State's Attorney for Prince George's County,* on the brief, for appellee in No. 647.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *William B. Spellbring, Assistant State's Attorney for Prince George's County,* on the brief, for appellee in No. 658.

ORTH, J., delivered the opinion of the Court.

These appeals concern waiver of jurisdiction in juvenile causes under Code, Art. 26, § 70-16.

*Matter of Waters,* 13 Md. App. 95, made clear that the purposes of a preliminary hearing were not the purposes of a waiver hearing. We said that "* * * the sole function of the [waiver] hearing is to resolve the question of

waiver *vel non* and that this is done on the assumption that probably the crime alleged was committed and that the juvenile committed it." We held: "Thus the State has no burden at the hearing to establish prima facie or otherwise corpus delicti and criminal agency." At 103. We applied the holding in *Matter of Flowers,* 13 Md. App. 414. The holding was challenged in *Matter of Toporzycki,* 14 Md. App. 298, and we affirmed it, saying we were not persuaded to depart from it.

KING RICARDO MURPHY, appellant in appeal no. 647, and LLOYD DAVID MURPHY, appellant in appeal no. 658, each ask "Can a juvenile be waived to adult court where there has been no evidence presented that would connect him with an offense?" and "Can a juvenile be waived to adult court where there has been no evidence presented that would show the commission of an offense?" Each argues again that § 70-16 requires the State to present evidence in the nature of a preliminary hearing. Under the rule that the State has no burden at a waiver hearing to establish prima facie or otherwise corpus delicti and criminal agency, it being assumed for waiver purposes that the crime the juvenile was alleged to have committed was committed and that the juvenile committed it, the answer to both questions is "yes". We abide with the rule enunciated in *Waters,* applied in *Flowers* and affirmed in *Toporzycki.* But we do so with a caveat.

Section 70-16 (b) of Art. 26, under the subheading *Factors to be considered,* prescribes:

> "In making a determination as to waiver of jurisdiction the court shall consider:
> (1) Age of child.
> (2) Mental and physical condition of child.
> (3) The child's amenability to treatment in any institution, facility, or programs available to delinquents.
> (4) The nature of the offense.
> (5) The safety of the public." [1]

---

1. For the purpose of making the determination the court may

We construed § 70-16 (b) in *Hazell v. State*, 12 Md. App. 144. We observed that not all of the five factors to be considered need be resolved against the juvenile to justify the waiver and we felt there was no utility in requiring the court to make an arithmetic-type calculation as to the weight to be given by it to each factor. In *Waters,* after finding it meet that for the determination of waiver *vel non* it be assumed that the juvenile committed the criminal offense alleged, we were careful to point out:

> "This is not to say that evidence concerning the alleged act is not to be received at the waiver hearing. One of the factors to be considered is the nature of the offense, * * * and we think this may encompass not only the type of crime but the circumstances surrounding its commission. That a victim was beaten or shot during the course of a robbery in addition to having his property stolen is certainly of probative value on the question of waiver." 13 Md. App. at 104.

We noted that evidence with respect to the circumstances surrounding the commission of the alleged crime was material to the factors to be considered in determining the matter of waiver. Ibid. The short of it is that a dearth of facts before the hearing court concerning the alleged offense may, in some circumstances, raise the risk that the evidence before the court is not legally sufficient to justify a waiver of juvenile jurisdiction.

Juvenile jurisdiction is properly waived where, under § 70-16, the juvenile is found, by an exercise of sound judicial discretion based upon legally sufficient evidence to be an unfit subject for juvenile rehabilitative measures. The measure of the evidence is a preponderance and not beyond a reasonable doubt. Hearsay evidence is not necessarily to be excluded. As we noted in *Hazell v. State,*

---

request a study concerning the child, his family, his environment, and other matters relevant to the disposition of the case. Sec. 70-16 (e); Maryland Rule 911 b.

For waiver of jurisdiction after summary review see § 70-16 (c) and *Matter of Toporzycki, supra.*

*supra,* at 153, the cases, the statute and the Maryland Rules all contemplate that such reports as those of the Department of Juvenile Services will be utilized at waiver hearings despite their hearsay character. And we thought that the fact that testimony may be hearsay would not *per se* call for its exclusion from evidence or prohibit it from being considered in making the waiver determination. See *Matter of Waters, supra,* at 97-98 and notes 4 and 5 at 98.

*Appeal No. 658—Lloyd David Murphy*

Lloyd David Murphy claims that the evidence before the lower court was not sufficient to support its waiver of jurisdiction over him.

The lower court dictated to the court reporter a statement of the grounds for its decision to waive jurisdiction. Rule 911 c. It said:

> "He's a sixteen-year-old youngster and apparently in good health both physically and mentally. He was found to be involved in a trespassing incident which involved the breaking and entering of a school in the County and in the neighborhood where he lives, he was placed on probation and remained on probation for over a year and was discharged from probation on the 10th of June of this year, 1971; though there is an error on the sheet which says that it was '70, but this is '71. Eight days later he's alleged to have held up a person living within the same general community in which he lives, a stone's throw away from him. He is a youngster who has exhibited some hostility in his growing up within the school system, a youngster who has shown deviousness as far as authority is concerned; and I mention that because of the statement in the earlier report from the Department of Juvenile Services pertaining to his denial of his identity to the probation officer, and a later recanting of that; and while in the parking lot

talking with the probation officer he didn't take this attitude of passivity as the reports from the Children's Center would seem to indicate, but I suppose you call it took the limbo position.

He was going to be the big guy amongst his friends. Well, if he wants to be big amongst his friends that's a choice he has to make. He can be big in more ways than one, and if he chooses to be big in a criminal manner then he just pays the cost of so being.

He was on probation for over a year and was just released therefrom. Certainly, it seems that while under some wraps he can respond positively, but I believe such shows also a lack of amenability to treatment within the institutions or programs, or facilities maintained for juveniles in our state, if indeed he committed the act as alleged in the petition. If one is to benefit at all from these programs one must have made up one's mind that he's going to so benefit, and it just doesn't seem that Lloyd has determined yet that he has benefitted from the probation under the juvenile jurisdiction, a program which allows one to remain in the community and work within it, and yet the two things that Lloyd has been involved in all occurred within his local community and within a half mile or mile of his own home, based on what I can conclude from what is shown in the file. He resides at Chapel Oaks Drive which is merely a long block away from the point of Eastern Avenue and Sheriff Road, and the victim of the alleged crime lives on 58th Avenue in Fairmont Heights, a stone's throw away.

I do find that this is a very serious offense, and it poses a threat to the safety of the community, and such is evident from the nature of the offense, if indeed he committed it."

The lower court had before it a petition, signed by the victim of the crime alleged to have been committed by appellant and authorized for filing by the Intake Officer, which gave as the facts on which the petition was based that on 10 June 1971 Murphy became "delinquent by reason that: he did unlawfully and feloniously, with a dangerous and deadly weapon (gun) did ROB Andrei Phillip Latney and did steal goods to the value of $40.00 (forty dollars) U.S. currency in violation of Article 27 Section 488." The court also had for its consideration various reports which supported the findings made and conclusions reached by it in arriving at its decision. Under date of 20 July 1971 there was a memorandum signed by a probation officer and supervisor of the Juvenile Court Services—Region 7 based on a report of a waiver investigation made by the Department of Juvenile Services. This thorough investigation covered the offense, the subject's prior criminal record, his family and neighborhood, his home and economic conditions, his school record, his health, and his personality. The memorandum recommended that appellant be evaluated at Spring Grove State Mental Hospital before any further disposition on the waiver motion. The recommendation was thus supported:

> "Lloyd seems to be a hostile and guarded person who has admitted a problem of drug dependency. His neighborhood is one of high delinquency and drug abuse. His father is probably a heavy drinker and may well be an outcast from the family unit. The mother seems very domineering and protective. He has two older brothers who have been involved in crime and one is currently in prison. He indicated that he does not hallucinate, but he feels that he often has powers of predicting the future. He seems clever and manipulative, but his achievement in school has been limited. School officials have termed him sullen and potentially violent.

> The youth was sixteen years and two months when the incident is alleged to have occurred. His test scores indicate he is very limited in scholastic ability, but he has never been evaluated for possible psychological problems. He is tall and slender for his age and admits to having formerly been addicted to heroin. He was on probation to this department for one year and was terminated in June, 1971. Such an offense as this so soon after dismissal, if proved, would lead one to believe the youth is not amenable to juvenile treatment. It should be noted that he has never been in a juvenile institution, however. The seriousness of the offense and the safety of the community demand prompt attention to this matter."

The court ordered appellant to be studied by the Maryland Children's Center of the Department of Juvenile Services. Its recommendations, set out in a letter dated 19 October 1971, were based upon "The final report of the Evaluation Committee." That report consisted of a Social Service Evaluation, a Psychiatric Evaluation, a Psychological Evaluation, a Medical Summary, and a Group Living Evaluation. At the waiver hearing counsel for Murphy informed the court that he had received a copy of the evaluation report, had gone over it and took no exception to it. The court asked defense counsel if there was "any evidence that you wish to put on" and defense counsel said no.

It is clear that the lower court considered the five factors as required by § 70-16. It is patent that the determination to waive jurisdiction was based on the divers reports before the court. These reports constituted legally sufficient evidence for the purpose and their contents supported the court's decision to waive jurisdiction. We cannot say that the determination of the lower court was found by other than an exercise of sound judicial discretion. It is correct, as appellant points out, that the

court did not follow the recommendations of the Evaluation Committee of the Department of Juvenile Services,[2] but, of course, it was not obliged to do so. The final determination was in the court's sound discretion and on the evidence before it there is no basis for us to hold that such discretion was abused.

### Appeal 647—King Ricardo Murphy

Our refusal to depart from our holding in *Matter of Waters, supra,* disposes of the appeals of King Ricardo Murphy because he, unlike Lloyd David Murphy, does not present as a separate question in his brief the matter of the sufficiency of the evidence in regard to the waiver of jurisdiction. See Rule 1046 f. In any event, there are in the record before us three petitions to establish jurisdiction over appellant, each signed by a police officer and authorized to be filed by an intake officer. The first, J. A. 1967-71, filed 6 July 1971, gave as the facts on which it was based that on 21 June 1971 "juvenile did become disorderly by reason that he became loud and profane and swung his fists at several police officers." The second, J. A. 1997-71, filed 7 July 1971, gave as the facts on which it was based that on 3 July 1971 appellant "did become delinquent by reason that he did have concealed about his person a 32 cal. 'H & R' revolver and a 22 cal. Ruger [sic] automatic pistol." The third, J. A. 2382-71, filed 16 August 1971, gave as the facts on which it was based that appellant "did become delinquent by reason that he did

---

2. The recommendations were:
   "1. Return to the home.
   2. Placement under probation supervision.
   3. Referral of Lloyd to the appropriate local mental health clinic for some form of psychotherapy. If possible, involvement in group psychotherapy is urged.
   4. Encourage continuance in the neighborhood youth corps program.
   5. Referral of Mr. and Mrs. Murphy [appellant's mother and father] to the appropriate agency for counseling."
We note also that the Evaluation Report showed that appellant stated "he was a user of heroin approximately two years ago. He indicated that this had come about out of a desire to go along with his peer group. According to Lloyd, he used heroin for about one and a half or two years."

unlawfully and feloniously, with a dangerous and deadly weapon [GUN] did ROB Lurent Donald Jennings and did violently steal US Currency and merchandise to the value of $476 U.S. Current Monies in violation of Article 27 section 488." By three separate orders, each dated 21 September 1971, the lower court waived jurisdiction as to each offense upon motions by the State and after hearing. At the waiver hearing counsel for appellant sought a proceeding in the nature of a preliminary hearing. The court said: "I believe that the waiver hearing is only to determine whether, based on the information available to the Court as pertains to the youngster and to the alleged offense for which waiver is sought, he falls within the criterion established by our legislature to determine whether or not there should be juvenile jurisdiction waived." As we have made obvious, we are in accord. The court then gave a statement of its grounds for its decision to waive its jurisdiction as required by Rule 911 c:

"Now, here we have a youngster who is seventeen years of age, a youngster who has had vast experience with the juvenile court. Unlike in the case of his brother there is no suggestion in the report from the Department of Juvenile Services that this young man is suffering from any psychological disability.[3]

As far as the age is concerned we could find him within the age category, that is, he's under eighteen years of age; and he appears to be of good mental and physical health. And he certainly has been exposed to programs and facilities maintained for juveniles, and apparently without great success.

Now, the Court notes that this young man has been before the court on numerous occasions since 1965, ofttimes having been brought here by his parents because of his ungovernableness, and once by the Board of Education because of un-

---

3. King Ricardo Murphy and Lloyd David Murphy are brothers.

governableness. He was found to be involved and delinquent and placed on probation, in some instances committed to Boys Village and to the Maryland Training School for ungovernableness. This covered a period of approximately three or four years. And in 1969 the nature of the offenses become more severe, and in 1971 we had him before us on an armed robbery petition.

As I said, we don't go into the merits at this hearing. We view the records and the reports which are part of the file in this case, and based on these records and reports we try to determine whether or not this young man is amenable to continue treatment within the scope of the juvenile court. And when we view what has transpired in the past and his continued commission of offenses which are cognizant, I believe, in the juvenile court, we must conclude, then, that he's not amenable to treatment in programs, institutions, or facilities maintained for juvenile delinquents.

Now, the nature of the offense speaks for itself. We do not make a determination that he did commit the offense of armed robbery, but the allegation of armed robbery in and of itself speaks of the heinousness of the offense. If this young man is guilty of the commission of the same, certainly the safety of the public is threatened when we have someone arming himself with a deadly and dangerous weapon, and with that weapon obtaining property from the person of another.

The concealed weapons charge is not one which in and of itself creates a danger to the public, but when we consider that in conjunction with the weapons charge—we have also an armed robbery charge and a disorderly charge, not all arising at the same time but within a month's time all three of these violations are alleged to have occurred. In light of that it would

seem that certainly a threat to the safety of the public is shown, if, of course, this young man is guilty of such, and we could only determine that upon the merits here.

\* \* \*

I think that the showing of nonamenability to treatment in juvenile institutions or programs as has been exhibited by this young man's previous conduct and the alleged involvement with a gun, which are the facts which really cause me to take the position that waiver is warranted in this case."

We find in the record legally sufficient evidence to support the findings and conclusions of the lower court. There was a thorough waiver investigation made under date of 22 March 1971 which was brought current as of 25 August 1971. The investigation covered each of the five factors to be considered under Art. 26, § 70-16. We see no abuse of judicial discretion in the waiver of jurisdiction as to King Ricardo Murphy.

> *As to Lloyd David Murphy, Appeal No. 658 (J. A. 1797-71 below): O r d e r of 21 October 1971 affirmed.*
> *As to King Ricardo Murphy, Appeal No. 647 (J. A. 1967-71, J. A. 1997-71 and J. A. 2382-71 below): the Order of 21 September 1971 in each case affirmed.*