# IN RE: SAMUEL M.

[No. 125, September Term, 1981.]

*Decided March 9, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with

whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Petitioner Samuel M. challenges the validity of Maryland Code (1974, 1980 Repl. Vol.) § 3-817 (c), Courts and Judicial Proceedings Article, in his effort to avoid trial under the regular criminal procedure. He claims it is "unconstitutional insofar as it imposes a presumption of guilt for purposes of waiver of juvenile jurisdiction." [1] We disagree.

A petition filed in the Circuit Court for Prince George's County claimed that Samuel M. was delinquent. The specific delinquent acts alleged were assault with intent to rob, assault and battery, an attempt to steal property having a value of less than $300, and molesting and threatening a student with bodily harm on school grounds in the immediate vicinity of a school in violation of Code (1978) § 26-101 (b), Education Article.[2] The State's Attorney for Prince George's County asked that juvenile jurisdiction be waived. The judge said after a hearing and argument:

"The Court in considering the question of waiver of jurisdiction has five criteria that it must consider. These criteria must be considered each in relation to the other. There is no mathematical score. There is no quantitative score.

"The age of the child. He is sixteen and a half

---

**1.** Section 3-817 (c) states:

"The court may not waive its jurisdiction unless it determines, from a preponderance of the evidence presented at the hearing, that the child is an unfit subject for juvenile rehabilitative measures. For purposes of determining whether to waive its jurisdiction, the court shall assume that the child committed the delinquent act alleged."

**2.** Section 26-101 (b) states in pertinent part:

"A person may not molest or threaten with bodily harm any student, employee, administrator, agent, or any other individual lawfully on the grounds or in the immediate vicinity of any institution of elementary, secondary, or higher education."

Criminal sanctions for violations are set forth in § 26-101 (d).

years of age. He is charged with an offense which is a serious crime against a person. Had he been charged with robbery rather than attempted robbery, of course the matter would not be here because since he is sixteen and a half years of age, the matter would be tried in the first instance in the adult court.

"Therefore, that militates neither for or against waiver. It simply means that the State does have facilities to deal with someone who is his age on capital offenses, and there are life offenses and for the crime of armed robbery.

"Mental and physical condition of the child. The Court does note from the report that he does have some health problems including asthma, including vision problems, having traits of sickle cell anemia.

"The Court just by looking at him, however, is able to say that he can be handled either in the adult facility or juvenile facility. Therefore, the question there is again one that can be resolved in either court.

"The nature of the offense and alleged participation in it. I have been handed the police report. His alleged participation in it is speculative at best. It does seem to be a great deal of circumstantial evidence but, of course, the statute requires me to assume for the purposes of this hearing that he has committed the offense for which he is charged. So, on the surface again this is a serious offense which can be handled either in the adult facility or the juvenile facility.

"Public safety. If in fact he committed this offense, this is a major consideration which would militate in favor of waiver, I would think, because the robbery was on school property which upsets our entire school system which causes everyone who has children in the school system and everyone who deals with the public schools great concern.

"*So, as in most of the cases, the question is*

86

*whether or not he is amenable to treatment.* He is not a typical sixteen and a half year old boy. He is a young man who has had trouble in his life, some attributable to him, some not attributable to him.

"I notice from this report he was placed by Catholic Charities in the home of Mr. and Mrs. Gilbert. The allegation is that he left there taking two rings. Again, I am not giving particular importance to that except from the standpoint of dealing with the issue of whether or not he is amenable to treatment.

"He was at our most secure facility, the Maryland Training School, for a period of 30 days where he would be given the opportunity to see what the Training School was like, see what incarceration was like. That apparently has had little, if any, effect on him.

"Frankly, I think that because of his sophistication, he is not amenable to treatment. The Court will waive its exclusive jurisdiction to the adult court." (Emphasis added.)

The juvenile appealed to the Court of Special Appeals. In order that we might address this issue of public importance, we issued the writ of certiorari ex mero motu prior to argument in the intermediate appellate court.

We recently dealt with another aspect of § 3-817 in the case of *In re Randolph T.*, 292 Md. 97, 437 A.2d 230 (1981). At that time we examined some of the earlier Maryland cases relative to waiver of juvenile jurisdiction. We referred in n.4 at 100 to the evolution of the Maryland statute pertaining to juvenile offenses. We also examined the due process holdings in juvenile matters by the Supreme Court in such cases as *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); and *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

Citing *In re Randolph T.,* petitioner recognizes that the purpose of the waiver proceeding (or "transfer" proceeding

as it is known in many states) is to determine whether or not the child is a fit subject for juvenile rehabilitative measures. Referring, among others, to certain of the cases which we reviewed in *In re Randolph T.*, he also recognizes that not all of the factors need be resolved against the juvenile in order to justify a waiver. He contends, however, citing *Manley v. Georgia,* 279 U.S. 1, 49 S. Ct. 215, 73 L. Ed. 575 (1929); *Mahoney v. Byers,* 187 Md. 81, 87, 48 A.2d 600 (1946); and 1 *Wharton's Criminal Evidence* § 94, at 159 (13th ed. C. Torcia 1972), that "[o]n grounds of denial of due process, 'an irrebuttable or conclusive statutory presumption is ordinarily held unconstitutional.'" He goes on to claim:

> "The irrebuttable presumption of guilt in waiver hearings is invalid because the overall test for waiver is so constructed that the presumption alone will inevitably weigh heavily in favor of waiver, a disposition which the applicable case-law recognizes as carrying the potential for 'dire consequences'. Specifically, the presumption alone will frequently cause the factors of public safety and the nature of and child's participation in the crime to be resolved in favor of waiver.[2] Because the law is clear that waiver is permissible even if all of the statutory criteria do not favor it, it will accordingly be permissible to waive juvenile jurisdiction even if the State has not demonstrated that the child is not amenable to juvenile rehabilitative measures, which is theoretically the most important factor."

He adds in n.2:

> "In the instant case, the presumption alone caused the hearing judge to conclude that the public safety 'is a major consideration which would militate in favor of waiver . . . .'"

It will be noted that this argument does not correctly set forth the findings of the judge.

As an appendix to its decision in *Kent,* 383 U.S. 541, the Supreme Court suggested the following criteria to be used in

determining whether to waive jurisdiction over a child and transfer him to the regular criminal procedure:

"1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

"2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

"3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

"4. The prosecutive merit of the complaint, *i.e.,* whether there is evidence upon which a Grand Jury may be expected to return an indictment. . . .

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the [criminal court].

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

"7. The record and previous history of the juvenile. . . .

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court." 383 U.S. at 566-67.

It is of interest that S. Davis, *Rights of Juveniles* § 4.3, at 4-14 (1981), comments, "A comprehensive survey of some 207 juvenile courts in the country showed that two factors were cited by the courts as weighing most heavily in the decision to waive jurisdiction: the seriousness of the offense and the past history of the juvenile." He further states:

"One of the criteria suggested by the Supreme Court in *Kent* was the prosecutive merit of the complaint, *i.e.,* whether there is probable cause to believe the child committed the offense charged. A number of states, however, require a finding of probable cause or 'reasonable grounds' as an additional requirement for waiver, quite apart from the non-amenability finding. In *A Juvenile v. Commonwealth* the Supreme Judicial Court of Massachusetts said: 'Although we hold that an evidentiary hearing is not constitutionally mandated, we believe that the *preferable approach,* in light of the importance of a decision to transfer a juvenile, is for there to be a determination of probable cause at the transfer hearing.' (Emphasis added.) It should be noted that present Massachusetts law requires a determination of probable cause to be made at the transfer hearing.

"It should be emphasized, however, that even though a finding of probable cause is desirable, or even statutorily required, a waiver hearing is much more than a probable cause hearing. In addition to finding that probable cause exists, the court should consider whether the child is amenable to the rehabilitative processes available to the court, perferably should make the latter determination based on relevant criteria that have been prescribed by statute or judicial decision, and should state in the waiver order why jurisdiction is being waived." *Id.* at 4-15 to -16 (emphasis in original).

Also of interest is that although the author indicates that in some states a finding of probable cause may be "statutorily required," never once does he mention such a finding as being constitutionally required nor does he discuss the constitutional infirmity of a presumption such as is contained in our statute.

In the above quoted passage, Davis referred to *A Juvenile v. Commonwealth,* 370 Mass. 272, 347 N.E.2d 677 (1976).

That case grew out of *Breed v. Jones,* 421 U.S. 519, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975), which was analyzed in *Parojinog v. State,* 282 Md. 256, 262-63, 384 A.2d 86 (1978). In *Breed* the Court held that the juvenile's rights under the Fifth and Fourteenth Amendments to the United States Constitution had been violated. There the juvenile court first had found to be true evidence from prosecution witnesses who had testified against the juvenile at an adjudicatory hearing. It continued the proceedings for a disposition hearing. Then it determined that the defendant was not amenable to treatment programs available through the juvenile court, and ordered that he be bound over for trial as an adult. The juvenile subsequently was so tried. Chief Justice Burger said for the Court in *Breed:*

> "A requirement that transfer hearings be held prior to adjudicatory hearings affects not at all the nature of the latter proceedings. More significantly, such a requirement need not affect the quality of decisionmaking at transfer hearings themselves. In *Kent v. United States,* 383 U. S., at 562, the Court held that hearings under the statute there involved 'must measure up to the essentials of due process and fair treatment.' However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings.[18]" 421 U.S. at 537-38.

The Court stated in n.18:

> "We note that nothing decided today forecloses

States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See *Collins v. Loisel,* 262 U. S. 426, 429 (1923); *Serfass v. United States,* 420 U. S. 377, 391-392 (1975). The instant case is not one in which the judicial determination was simply a finding of, *e. g.,* probable cause. Rather, it was an adjudication that respondent had violated a criminal statute." 421 U.S. at 538.

In *A Juvenile* Chief Justice Hennessey wrote for the Supreme Judicial Court of Massachusetts:

"Finding no constitutional or statutory require-ment (under the then controlling statute) to hold a probable cause or evidentiary hearing on the com-plaint before transferring a juvenile to adult court, we cannot agree with the plaintiff's contention that he was denied the opportunity to cross-examine or produce evidence in violation of his constitutional rights." 370 Mass. at 279-80.

*In re John Doe,* 61 Haw. 48, 594 P.2d 1084 (1979), concerned a contention that the statute required proof of the commission of the alleged offenses by a preponderance of the evidence before a waiver might be allowed, and that the order waiving juvenile jurisdiction must be overturned because of an absence of proof that the juvenile in fact committed the offenses charged. In rejecting this contention, the court observed:

"In the instant situation, imposition of a require-ment that in a waiver proceeding a minor must be shown by a preponderance of evidence to have committed the offenses alleged would in all prob-ability have the effect under *Breed* of foreclosing subsequent criminal prosecution. *See also United States ex rel. Bombacino v. Bensinger,* 498 F.2d

875, 878 n. 11 (7th Cir.), *cert. denied,* 419 U.S. 1019 (1974); Note, *Juvenile Law — Double Jeopardy — TRANSFER HEARINGS MUST BE HELD PRIOR TO ADJUDICATION ON MERITS — Breed v. Jones,* 421 U.S. 519 (1975), 25 DePaul L. Rev. 783, 788 & n. 27 (1976). The mere introduction of evidence for the purpose of showing by a preponderance that the minor committed the offenses alleged would cause jeopardy to attach. *Breed, supra.* A decision to waive jurisdiction would then become meaningless. We do not regard such an absurd result to have been intended by the legislature, and we consequently hold that, with regard to waiver hearings, HRS § 571-41 (1976) does not require proof by a preponderance of the evidence that the minor committed the offenses alleged. HRS § 1-15(3) (1976); *see State v. Taylor,* 49 Haw. 624, 425 P.2d 1014 (1967).

"We are particularly mindful that the purpose of a waiver hearing is not to determine whether the minor has committed — or even whether there is probable cause to believe that he has committed — the offenses alleged. For purposes of waiver, the charges against a minor are in actuality presumed to be true, and evidence may not ordinarily be admitted to prove the truth of the allegations of criminal law violation. *In re Welfare of W.J.R.,* Minn., 264 N.W.2d 391, 393 (1978). The ultimate concern in a waiver proceeding is not whether the minor committed the offenses alleged, but whether sufficient evidence has been adduced to justify waiver under the standards specified in HRS § 571-22 (1976)." 61 Haw. at 53-54.

As we earlier indicated, Samuel M. has cited 1 *Wharton's Criminal Evidence* § 94, at 159. It is instructive to note the beginning paragraph of § 94:

"The legislature has the power to provide by statute that proof of one fact shall constitute

presumptive or prima facie evidence of another one. Such a statute will be constitutional if, in accordance with the experience of mankind, there is a natural and rational evidentiary relation between the fact proved and the one presumed; if the defendant has more convenient access to evidence relating to the fact to be presumed; and if, by requiring defendant to go forward with evidence to rebut the presumption, he is not thereby being subjected to unfairness or hardship." *Id.* at 154.

The paragraph from which the sentence cited by Samuel M. is taken reads:

"The legislature cannot constitutionally make one fact conclusive evidence of another one if the former is not, in and of itself, by virtue of its own force, conclusive. Accordingly, an irrebuttable or conclusive statutory presumption is ordinarily held unconstitutional." *Id.* at 159.

Petitioner also cites *Manley,* 279 U.S. 1, and *Mahoney,* 187 Md. 81. In *Manley* the Supreme Court struck down a statute stating, "Every insolvency of a bank shall be deemed fraudulent, and the president and directors shall be severally punished by imprisonment and labor in the penitentiary for not less than one (1) year nor longer than ten (10) years. . . ." The statute then went on to provide that the presumption of fraud might be repelled "by showing that the affairs of the bank ha[d] been fairly and legally administered, and generally, with the same care and diligence that agents receiving a commission for their services are required and bound by law to observe. . . ." The Court said, "Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property." 279 U.S. at 6.

*Mahoney* involved a Maryland Racing Commission rule which provided that the discovery of any drug in the saliva, urine, or blood of a horse on the day of a race, or a finding from other competent evidence that such a drug had been

administered within forty-eight hours before the race would be conclusive evidence either that the trainer had knowledge of the fact or that he was guilty of carelessness in permitting the drug to be administered. The Court stated:

> "The Commission is a creature of the Legislature and the Legislature does not possess the power under the State Constitution to prevent one from making a defense to a charge brought against him by substituting an irrebuttable presumption . for facts. Such a law would be arbitrary, illegal, capricious and hence unconstitutional. 'That the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People.' Art. 20, Md. Declaration of Rights. This rule prevents the trial of facts and calls for the revocation of the license without cause then." 187 Md. at 87.

Clearly, an examination of *Wharton's* and of these latter two cases yields the unmistakable and essential conclusion that presumptions of ultimate fact are to be condemned. We have no such presumption under the statute which Samuel now challenges. In this regard, Judge Orth opened the opinion in *Matter of Murphy*, 15 Md. App. 434, 291 A.2d 867 (1972), by saying for the court:

> "*Matter of Waters,* 13 Md. App. 95, [281 A.2d 560 (1971),] made clear that the purposes of a preliminary hearing were not the purposes of a waiver hearing. We said that '* * * the sole function of the [waiver] hearing is to resolve the question of waiver *vel non* and that this is done on the assumption that probably the crime alleged was committed and that the juvenile committed it.' We held: 'Thus the State has no burden at the hearing to establish prima facie or otherwise corpus delicti and criminal agency.' At 103. We applied the holding in *Matter of Flowers,* 13 Md. App. 414 [, 283 A.2d 430 (1971)]. The holding was challenged in Matter *of Toporzycki,* 14 Md. App. 298, [287 A.2d 66 (1972),]

and we affirmed it, saying we were not persuaded to depart from it." 15 Md. App. at 435-36.

In other words, the waiver issue involves only a determination of which court will have jurisdiction over the juvenile for the purpose of deciding whether or not he has committed the acts alleged. As we stated in *In re Randolph T.*, the disposition made at the waiver hearing does not constitute a final determination of the individual's status. An adjudication of guilt is not involved. Although if waived the juvenile is being removed from the juvenile system, the ultimate determination of his status will come only after due trial and the concomitant panoply of constitutional rights and protections. This clearly echoes the underlying intent of the presumption premise as set forth in § 3-817 (c): *"For purposes of determining whether to waive its jurisdiction,* the court shall assume that the child committed the delinquent act alleged." (Emphasis added.) Manifestly, use of this presumption is permissible only for the determination of the waiver issue, and does not interfere with a juvenile's right to proof beyond a reasonable doubt as to every element of the offense charged. The presumption creates no prima facie case of guilt against the juvenile. *Compare Sandstrom v. Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), *with Patterson v. New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). Because of the character of the waiver determination, waiver is not automatic in light of the attention also to be accorded to other statutory criteria such as the public safety, the nature of the offense, and the child's amenability to treatment. *See* § 3-817 (d). The record demonstrates that these considerations were carefully weighed in Samuel's case.

Moreover, there is no constitutional right to be treated as a juvenile. As the court pointed out in *Woodard v. Wainwright,* 556 F.2d 781, 785, *rehearing denied,* 560 F.2d 1023 (5th Cir. 1977), *cert. denied,* 434 U.S. 1088 (1978), "[T]reatment as a juvenile is not an inherent right but one granted by the state legislature [;] therefore the legislature may restrict or qualify that right as it sees fit, as long as no

arbitrary or discriminatory classification is involved." That statement is in line with our discussion in *Matter of Anderson,* 272 Md. 85, 94-97, 321 A.2d 516, *appeal dismissed,* 419 U.S. 809 (1974), *cert. denied,* 421 U.S. 1000 (1975). That which the General Assembly created it may abolish.

In *Breed,* 421 U.S. 519, the Court recognized that the states have latitude in fashioning appropriate waiver standards. That latitude easily embraces the path that the General Assembly has chosen here. Our statute focuses on the actor, the juvenile, and not on the purported delinquent act. No burden of proof is shifted to the juvenile. *See Parojinog,* 282 Md. at 261; *Matter of Trader,* 20 Md. App. 1, 14, 19-20, 315 A.2d 528, *rev'd on other grounds,* 272 Md. 364, 325 A.2d 398 (1974). Also, *see generally Wiggins v. State,* 275 Md. 689, 344 A.2d 80 (1975).

Thus, given the presumption of validity which attaches to legislative enactments, the absence of a constitutional right to treatment as a juvenile, the overriding purpose of the waiver hearing as a determinant of jurisdiction over the juvenile, and the fact that the juvenile is not impermissibly required to prove his innocence of the offenses charged prior to a later trial accompanied by the full panoply of constitutional safeguards, Maryland's legislative scheme of waiver is not violative of any of the accused's due process rights. The fact that other states have seen fit to require some other standard of proof is a matter of legislative judgment. The legislature's choice of an appropriate standard does not indicate a constitutional determination. The juvenile here has been able to show us no case holding that a statute such as ours unconstitutionally infringes upon his rights. Since the presumption is only one criterion for consideration when a court addresses the question of whether to waive its jurisdiction over the juvenile, we see the statute as a legitimate exercise of legislative policy and discretion.

*Judgment affirmed; appellant to pay the costs.*